UNITED STATE DISTRICT COURT
DISTRICT OF NEW JERSEY

JOHNSON & ASSOCIATES, PC
BY: ADRIAN J JOHNSON, ESQ.
(ATTORNEY ID: 000592012)
485C US Highway 1 South, Suite 100
ISELIN, NJ 08830
ATTORNEYS FOR PLAINTIFFS

| | |
|---|---|
| DEEJAIZ LLC D/B/A SUPREME EVENTZ and SUPREME PRODUCTIONZ, JASON ROBINSON, and DANYALE ROBINSON, | AMENDED VERIFIED COMPLAINT |
| Plaintiff(s), | Case No.: 3:23-CV-03192-MAS-RLS |
| v. | PLAINTIFFS' DEMANDS A TRIAL BY JURY |
| THE TOWNSHIP OF FRANKLIN, NEW JERSEY; VINCENT LUPO, CONSTRUCTION OFFICIAL, THE TOWNSHIP OF FRANKLIN; DOUG KOWALSKY, FIRE INSPECTOR/FIRE MARSHALL, THE TOWNSHIP OF FRANKLIN; JOHN HAUSS, DIRECTOR OF FIRE PREVENTION, THE TOWNSHIP OF FRANKLIN; VINCENT ANDREW DOMINACH, JR., ECONOMIC DEVELOPMENT DIRECTOR, THE TOWNSHIP OF FRANKLIN; SAPANA SHAH, TOWNSHIP ATTORNEY, THE TOWNSHIP OF FRANLKIN; JOHN DOE, #1 – 50; AND MARY ROE, #1 – 50, | |
| Defendant(s). | |

PLAINTIFFS, DEEJAIZ LLC D/B/A SUPREME EVENTZ and SUPREME

PRODUCTIONZ (hereinafter referred to as "SUPREME"), and JASON

ROBINSON and DANYALE ROBINSON (hereinafter referred to as

"ROBINSON")(hereinafter all collectively referred to as

"PLAINTIFFS" and/or "SUPREME"), through their attorney,

1

Johnson & Associates, P.C., complaining of the DEFENDANTS sets forth and alleges as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over all causes of action asserted herein pursuant to 28 U.S.C. § 1331 in that this civil action arises under the Constitution, laws, or treaties of the United States.  This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

2. This Court has jurisdiction over each defendant named herein because each defendant is either a corporation that does business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District courts permissible under traditional notions of fair play and substantial justice.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (a) because: (i) one or more of the defendants either resides in or maintains executive offices in this District; (ii) a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein, occurred in this District; and (iii) defendants have received substantial compensation in this District by doing business

2

here and engaging in numerous activities that had an effect in this District.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (b) insofar as a substantial part of the events of omissions giving rise to the claim occurred within this judicial district.

## PARTIES

1.    The PLAINTIFF, DEEJAIZ LLC D/B/A SUPREME EVENTZ and SUPREME PRODUCTIONZ, is an African American owned limited liability company organized under the laws of the State of New Jersey, with its principal place of business located at 508 New Brunswick Road, Somerset, NJ 08873. Attached hereto as **Exhibit A Minority and Women Certification.**  Attached hereto as **Exhibit B Small Business Set-Aside Act Certification.**

2.    JASON ROBINSON, an African American adult individual, with his primary, current residence at 508 New Brunswick Road, Somerset, NJ 08873.

3.    DANYALE ROBINSON, an African American adult individual, with her primary, current residence at 508 New Brunswick Road, Somerset, NJ 08873.

4.    Hereinafter, SUPREME and ROBINSON shall be referred to collectively as PLAINTIFF and/or SUPREME.

5.    At all times relevant thereto, DEFENDANT, THE TOWNSHIP OF FRANKLIN, NEW JERSEY (hereinafter referred to as

3

"the TOWNSHIP", "TOWNSHIP OF FRANKLIN", "FRANKLIN TOWNSHIP",
and/or "DEFENDANT") is a municipal corporation (city);
political subdivision of a county (township); a subdivision of
a state (county); government contracted/affiliated/employed
bodies sanctioned by local/state/national government to
address civic needs in the State of New Jersey.

6.    DEFENDANTS, VINCENT LUPO, CONSTRUCTION OFFICIAL, THE
TOWNSHIP OF FRANKLIN (hereinafter referred to as "LUPO" and/or
"CONSTRUCTION OFFICIAL"); DOUG KOWALSKY, FIRE INSPECTOR/FIRE
MARSHALL, THE TOWNSHIP OF FRANKLIN (hereinafter referred to as
"KOWALSKY" and/or "FIRE INSPECTOR"); JOHN HAUSS, DIRECTOR OF
FIRE PREVENTION, THE TOWNSHIP OF FRANKLIN (hereinafter
referred to as "HAUSS" and/or "DIRECTOR OF FIRE PREVENTION");
VINCENT ANDREW DOMINACH, JR., ECONOMIC DEVELOPMENT DIRECTOR,
THE TOWNSHIP OF FRANKLIN  (hereinafter referred to as
"DOMINACH" and/or "ECONOMIC DEVELOPMENT DIRECTOR"); SAPANA
SHAH, TOWNSHIP ATTORNEY, THE TOWNSHIP OF FRANLKIN (hereinafter
referred to as "SHAH" and/or "TOWNSHIP ATTORNEY") are natural
persons domiciled in the State of New Jersey and are
employees, agents, or elected officials for the State of New
Jersey; City of Somerset, NJ; City of Franklin, NJ; Township
of Franklin, NJ; County of Somerset and are public servants.

7.   At all times relevant any reference to Franklin Township shall be inclusive of Franklin Township's Agents acting on behalf of Franklin Township.

8.   At all times relevant thereto, the names of JOHN DOE, #1-50, and MARY ROE, #1-50, shall be inserted to represent any indispensable parties discovered during the litigation process.  Our intention is to preserve space in this caption if the courts determine that these newly discovered defendants are indispensable parties. It is the plaintiff's responsibility to raise such claims or risk waiving them.

## FACTUAL ALLEGATIONS

1. Plaintiff operated a African-American/Minority owned business consisting of a social meeting and event space that hosted various social events, receptions, bar/bat mitzvahs, birthday parties and other private gatherings/events that were approved by all appropriate departments from the Township of Franklin (Zoning, Fire, Construction, etc.).

2. On February 4, 2021, the Plaintiff filed for and obtained use variance approval from the Franklin Township Zoning Board of Adjustment. At that time, extensive testimony regarding the nature and types of uses of the building was taken. This included allowing guests to cater in food and

alcohol, the type of parties and events to be held, as well as specific information regarding the nature of the use.

3.  Upon inspection, the Township of Franklin granted all necessary approvals, including a Certificate of Continued Building Compliance signed by the Construction Official, an Occupancy Placard, and, inter alia, a Notice of Satisfactory Inspection signed by Vince Lupo, Construction Code Official, Franklin Township, and Doug Kowalsky, Franklin Township Fire Inspector/Fire Marshall.

4. A use group of A-3 was provided to the Plaintiff by Franklin Township.

5. All documentation and applications for permits and variances were explicit in exactly how Plaintiff intended to use the space.

6. The certificate of occupancy Plaintiff received was for a B use group and there were no present violations.

7. The certificate also indicates that health department approval would be needed to bring food onsite.

8. Inclusion of that caveat, lends credence to the fact that it was known that food was going to be allowed on premises.

9. The B-Use group designation would negate the allowance of food on site or the need to contact the Health Department,

as to allowing consumption of food and beverage on the premises would place you in an A-2 Use group per guidelines.

10.  Vincent Lupo stated to Plaintiff that "if you so much as open a bottled water," you are an A-Use group.

11.  The subsequent issuance of the A-3 Use group placard, was also assigned incorrectly by Franklin Township.

12.  Franklin Township should have categorized Plaintiff as an A-2 Use by the nature and description of the business on all applications.

13.  Franklin Township made multiple errors and Plaintiff's reliance on Franklin Township to be thorough, knowledgeable and a governing authority proved to be detrimental.

14.  Delays and minor errors are expected when dealing with the township within reason.

15.  Franklin Township's delay of 15 months in finding they made neglectful errors and provided inaccurate approvals was not within reason and was a shock to the conscience.

16.  Franklin Township was careless with Plaintiff's business and the due process Plaintiff went through to open its' business.

17.  Franklin Township did not ensure that Plaintiff had adequate information and approvals to the detriment of its business.

18.   Franklin Township haphazardly provided Plaintiff with numerous errors.

19.   As a result, Plaintiff relied on all approvals issued to the detriment of its business.

20.   Over one (1) year later, Fire Marshall Doug Kowalsky of Franklin Township called the Plaintiff on February 8, 2022, and advised he needed to inspect the premises.

21.   The Plaintiff assumed that this was an annual inspection and immediately arranged for Mr. Kowalsky to conduct the inspection on February 9, 2022.

22.   On February 9, 2022, Mr. Kowalsky informed the Plaintiff that his boss John Hauss, Franklin Township Director of Fire Prevention, informed him that he had heard Plaintiff was having events at the premises which the Plaintiff responded accordingly as the Plaintiff was having events in accordance with the prior approvals it obtained from the Township as well as an obvious conspicuous LED sign that read "Supreme Eventz" on the building's facade.  The plaintiff showed him the physical copies of the prior approvals, and also sent them to him via email upon his request.

23.   The Plaintiff immediately emailed the copies of all of the prior approvals received from the various departments of Franklin Township as requested by Mr. Kowalsky.

24.  Plaintiff was advised by Mr. Kowalsky that someone "dropped the ball" and that he would investigate and get back to Plaintiff as soon as possible.

25.  On February 9, 2022, Mr. Kowalsky advised that he would need to determine what needs to be done from a "fire safety angle" and would provide further advice.

26.  Mr. Kowalsky also advised in this email to Plaintiff that the Township "was not looking to interrupt your business at all, conversely, we want all Franklin Twp businesses to thrive".

27.  After Plaintiff, without incident, operated for over a year at the premises while successfully conducting numerous social events and continuing to grow its thriving business, the Township Fire Prevention Department, on March 9, 2022, issued a Notice of Imminent Hazard and Order to Take Corrective Action, signed by John Hauss, Franklin Township Director of Fire Prevention, which mandated that the Plaintiff cease operations/events by 12:00 P.M. on March 9th at the premises.  Attached hereto as **Exhibit C Event Contracts from January 2021 to December 2022 (99 Contracts).**

28.  The Plaintiff was completely surprised by this, as it had operated in the same manner approved by the Township without any interruption or incident. During their initial inspection, the Township Construction Official and Township

Fire Marshall signed off on the CCBC and the Notice of Satisfactory Inspection without making any comments or recommendations.

29.   Plaintiff relied on these inspections and subsequent satisfactory notices as accurate and complete.

30.   Furthermore, the Notice to the Plaintiff was not issued in compliance with N.J.A.C. 5:70-3.1 (d) states that when a fire official suspects that the Uniform Construction Code provisions are not being followed, a referral should be sent to the Construction Official for action.

31.   Due to the fact that the Notice was signed by Fire Prevention Officer John Hauss, rather than by Vincent Lupo, the Franklin Township Construction Official, Franklin Township did not comply with the aforementioned statute.

32.   Once Plaintiff received this notice, in an effort to exhaust any available administrative remedies it immediately filed an appeal with the Somerset County Construction Board of Appeals, and also, in an effort to work this matter out with the Township officials, requested an immediate meeting to discuss what would be needed to be done for Plaintiff's business to remain open and remove any perceived "imminent perils or hazards", if any, as well as implement appropriate measures to comply with A-2 Use group requirements.  The

Plaintiff was initially categorized as an A-3 Use, according to the occupancy placard issued by the Township.

33.  Plaintiff was repeatedly accused of not getting permits for construction.

34.  Plaintiff did not have any construction done on the Premises that would require permits.

35.  Plaintiff was accosted at the initial meeting and bombarded with accusations and at one point John Hauss mentioned whoever is wrong does not matter.

36.  Plaintiff was being asked by Franklin Township to fix items that were not related to the rented space, rather items that were in other parts of the building.

37.  Franklin Township due to the action of its' agents were doing anything and everything to harass Plaintiff, under the cover of purporting to "helping" Plaintiff.

38.  A flyer for a "Bougie Nights" event was placed on the table as an exhibit in this meeting.  March 24, 2022, was the date the supposed event was to take place.  This event was not approved, promoted or allowed by Plaintiff and did not occur.

39.  This was the catalyst that sparked the entire investigation by John Hauss by way of Doug Kowalsky.

40.  The "Boogie Nights" event was marketed in late January, and consequently Plaintiff received the

11

aforementioned call from Doug Kowalsky a week later, February 8th.

41.    After this meeting, upon the recommendations of Plaintiff's Fire Code expert Michael Whalen, and independently, Vincent Lupo granted a variant to the subject Notice which allowed Plaintiff to continue holding events at the premises provided that, as recommended by Mr. Whalen, there were two (2) Fire Watch professionals present at every event and that a detailed list of all such events be reviewed and approved by the Township Director of Fire Prevention John Hauss since such mitigation measures and controls in place would eliminate any alleged imminent peril or hazard.

42.    Further, John Hauss and Vincent Lupo visited the site on March 16, 2022, and requested minor repairs at the premises, which were promptly completed by Claimant to both Mr. Hauss' and Mr. Lupo's satisfaction in order to satisfy any concerns they had about continuing to hold events at the site.  Also, during this inspection, they pointed out issues in the building that were unrelated to Plaintiff's premises. It was the landlord's responsibility to resolve these issues. Sapana Shah revoked the right to operate in a subsequent letter to Plaintiff, citing issues fixed by the landlord as issues we did not address.  Plaintiff's zoning attorneys rebutted the letter.

12

43.  On March 21, 2022, Vincent Dominach sent Plaintiff an email stating, "I will contact the owners of the den to see if they are interested I will also inquire into several possibilities."

44.  It would appear Franklin Township did not have a lot of faith in David Rubin to do what needed to be done and in exhibiting the same suggested we look at other locations.

45.  The Plaintiff followed up with Vincent Dominach via email on April 7, 2022, regarding other locations that may be suitable for Plaintiff.

46.  Vincent Dominach responded to the same via email on April 7, 2022, stating, "The den is occupied, and I have not found any other suitable location."  Attached hereto as **Exhibit D Dominach Email.**

47.  Vincent Dominach's emails stand in stark contrast to his testimony on June 8, 2022, at the Construction Board of Appeals County of Somerset Hearings regarding 2 JFK Boulevard, Unit #4.  Attached hereto as **Exhibit E June 8, 2022 Hearing Transcript.**

48.  There were many other spaces available for Plaintiff to occupy, according to Vincent Dominach.

49.  The efforts of Plaintiff to remain in Somerset/Franklin Township were thwarted.

13

50.   Plaintiff did express interest in a potential location, formerly known as Bonkerz, a non-African American owned entity.

51.   Plaintiff requested an OPRA request for said location which was repeatedly ignored.  Attached hereto as **Exhibit F OPRA Records Request.**

52.   Plaintiff sent multiple follow-ups that went unanswered, which prompted Plaintiff to file a complaint to the New Jersey Government Records Council. Attached hereto as **Exhibit G Denial of Access Complaint.**

53.   In the stated complaint, Plaintiff made it clear that Plaintiff was purposefully being stonewalled because of the current issues with Franklin Township.

54.   This location was "available" even though Vincent Dominach sent an email claiming that there was nothing suitable/available.

55.   There was clearly a lack of true effort to help the Plaintiff relocate and the actions of Franklin Township align more toward running the Plaintiff out of town.

56.   In the June 8th hearing noted above, Vincent Dominach claimed there were plenty of spaces available but were not in Plaintiff's budget.

57.   However, Plaintiff had never discussed a budget with Vincent Dominach, and he admitted the same in the hearing of June 8th when questioned by Attorney Shah.

58.   Vincent Dominach was being deceitful in either his email correspondence or his statement at the hearing as noted above.

59.   Clearly evidence of bias, racial or otherwise, directed at the Plaintiff.

60.   Plaintiff in reviewing documents finally received from the OPRA request, only after the release of the same was enforced by the GRC's involvement, found that a CO was issued on December 3, 2018, for a kitchen upgrade.

61.   It can be inferred that Franklin Township in the issuance of the certificate knew that food and drink consumption would be taking place at Bonkerz.  Bonkerz, an A-3 Use and began marketing themselves as an Arcade and Restaurant.

62.   According to the Use Group Occupancy classifications, a Restaurant would be an A-2 Use.

63.   Why were the same requirements not enforced? Bonkerz is similar to an event space in many ways. It hosted parties. Bonkerz had neon lighting in a large area of the space and obstacles which logically speaking made that space much more prone to hazard than the open space concept Plaintiff had.

15

Bonkerz would have easily been able to change Use to an A-2 as there was a sprinkler system already in place.

64.   In theory, if Plaintiff changed their business description to a dancehall, where no food or beverage was to be served, Plaintiff would not have had to go for a variance. The same amount of people would have been allowed in the space partaking in the same activities sans food and beverage, and it would have been deemed safe without a sprinkler system.

65.   If Hauss "heard" Plaintiff was having events there, why was that cause for inspection if a dancehall is an allowable use in an A-3?

66.   If they were ignorant to the fact that Plaintiff had a use variance, even though a public notice was required to be posted, that means they were ignorant to the facts contained in the use variance, including that Plaintiff allowed for food/beverage to be catered on to the premises.

67.   It begs to question the motive or driver behind Hauss' renewed interest in a space that had already been approved by his department.

68.   Because the inspector "thought" Plaintiff's use was for something else they can haphazardly approve? If they don't read the applications, why have the application process in place at all.   An application, Plaintiff had to pay to submit.

16

69.   Additionally, it needs to be noted that zoning Attorney Alan Zublatt asked John Hauss, at the meeting, what made him go looking for Plaintiff after a year.

70.   John Hauss began to state that he was looking up a hall and began to stumble a bit at which point everyone from Frankling Township jumped in and Vincent Lupo stated what difference does it make and someone amongst the group for Franklin Township exclaimed "that's ridiculous".

71.   One would question why is a reasonable question "ridiculous". Calling the inquiry ridiculous, infers that they took a defensive stance to the question being an accusation or insinuation that Plaintiff was singled out for a reason.

72.   If there was no malice in his "search" a reasonable person would not have had such a reaction to what most would consider a fair question.

73.   Based on the "Boogie Nights" flyer that the Township exhibited as an "example" of what Plaintiff does/who they are, from an internet source that was not related to Plaintiff's website, marketed or sanctioned by Plaintiff, Plaintiffs(who are both of African American decent) as well as the zoning attorneys (one of Jewish descent the other of African American decent) felt it was racially offensive and motivated.

74.   The Boogie Nights flyer was Plaintiff's event. This was addressed in Kevin Jones' response to Sapanah Shah. The

17

Boogie Nights event flyer, which was posted by someone other than Plaintiff, was the catalyst for them "hearing" about Plaintiff. They pulled the flyer from the internet and made that an exhibit of Plaintiff's initial meeting in March.

75.   This event was never on Plaintiff's website, never sanctioned by Plaintiff, and whomever is behind it cannot produce a contract from Plaintiff stating otherwise.

76.   This event never happened and never was going to happen as Plaintiff only conducted "private" non-public events.

77.   This is not the first time someone had falsely claimed to have an event with Plaintiff and collect money from unsuspecting partygoers.

78.   Plaintiff has a provision in their contract that explicitly prohibits public events and the sale of tickets.

79.   We unfortunately live in a scam culture. Yet, Plaintiffs were not given the benefit of the doubt.

80.   Of all of the pictures and video the Township could have pulled from Plaintiff's website to make the same points of the need for an A-2 use requirements, they chose the most offensive representation, which couldn't be further from who Plaintiff is and what Plaintiff represents.

81.   In using this example not only were they offensive but, their intent appeared to be to suppress African American Culture.

82.   There were many examples they could have pulled from Plaintiff's website, as Plaintiff posted events regularly on their site but they chose that particular type of event to depict was negative/unacceptable.

83.   Many of the examples that showed food/beverage/dancing and lighting could have been obtained from the website governed and owned by us, but they did not utilize those.

84.   Plaintiff's site depicts different ethnicities, white, Asian, Hispanic, etc., but the "supposed Boogie Nights event" which is African American culture was chosen from an open market public source as a negative representation of Plaintiff and why they had an "issue" or presumably "heard" about Plaintiff.

85.   Plaintiff does not deny that zoning laws and regulations for public health, safety, and welfare reasons, are necessary and should be enforced.

86.   Plaintiff's argument is that the Township was willfully negligent in doing so within a reasonable timeframe (15 months is not reasonable).

87.  This dereliction of their duties not only left Plaintiff and Plaintiff's clients, according to them, in imminent peril, it placed Plaintiff in a position to have to install a sprinkler system in an unreasonable amount of time, to which they shuttered Plaintiff's business as it was intended to be operated which limited Plaintiff's income significantly leaving Plaintiff unable to afford the rent.

88.  This additionally caused a lawsuit against Plaintiff from the landlord for the same.

89.  In the meantime, the Township approved all of the repairs and allowed Plaintiff to proceed with holding events in the space as they always had while Plaintiff worked with the Landlord to install the fire alarm, shunt system and sprinkler system as stated in Michael Whalen's Change of Use Report- Hazard Analysis on April 3, 2022, which determined the building needed to be either completely sprinkled or sprinkled only on the second floor with a separation assembly/wall installed with a 2-hour rating.  Attached hereto as **Exhibit H Whalen Change of Use Report.**

90.  Accordingly, the Township, as is required, did not provide any responses or approvals to the report provided by Mr. Whalen other than the requirement that the Plaintiff comply with the issues outlined therein.

91.  On April 11, 2022, Plaintiff received a letter from Sapana Shah, Township Attorney, which was filled with inaccuracies and inconsistencies with respect to the uses at the premises, to which Plaintiff's attorney responded with a subsequent letter on the same date.

92.  Plaintiff has spent a substantial amount of time, money and resources to facilitate the following substantial affirmative steps: hired an expert for a use hazard analysis as required by Franklin Township; engaged a sprinkler company to prepare schematics and plans for a sprinkler system plan, fire alarm and shunt system; requested that Landlord schedule a flow test with Franklin Township; engaged a company to prepare the necessary engineering drawings for permit applications; hired Fire Watch professionals for all events held at the premises; provided a complete, detailed list of events for review and approval by John Hauss; and continued to work with the building owner to perform all necessary measures as required.

93.  The Plaintiff's expert Mike Whalen had determined, based on his expert analysis, that the location as currently used by the Plaintiff posed no imminent threat or peril.

94.  Despite the Plaintiff's operating without incident and in compliance with the variant allowed by Vincent Lupo as set forth above, the Township arbitrarily and capriciously

21

decided to order the business to shut down on May 22nd (even after Plaintiff in good faith arranged a meeting on May 15th to provide updates and request for an extension since significant progress is clearly being made here) as set forth in the May 18th letter from its attorney even though all mutually agreed upon measures have been implemented and the project to provide adequate sprinkling together with fire alarms/shunt systems in the building is proceeding.

95.   Plaintiff amended its appeal to the Construction Board of Appeals on May 20, 2022, and a hearing was scheduled for June 8, 2022. Due to Franklin Township's negligent, arbitrary and capricious actions, Plaintiff has been forced to shut down its business operations and has sustained great losses in an attempt to maintain its name, reputation, and business.

96.   A demand letter was served upon the Township on or about February 1, 2023, in which Plaintiff requested a resolution to their Notice of Tort Claim Against the Township of Franklin filed on June 6, 2022, and included such Notice of Tort with the demand letter. Attached herein as **Exhibit I Demand Letter and Notice of Tort Claim**.

97.   Qual-Lynx, the claims administrator for Franklin Township, responded on or about February 21, 2023, stating that Plaintiff's Notice of Claim had been denied on or about

November 22, 2022, and the same had never been provided to Plaintiff's original attorney.  Attached herein as **Exhibit J Denial of Notice of Claim.**

98.  Due to the collective actions of the Township and its agents, the Plaintiff has suffered irreparable losses. The Township has failed to provide the necessary resources and protection to the Plaintiff. As a result, the Plaintiff has been left with no other recourse but to seek relief in a court of law.

## COUNT I

### V. AMENDMENT OF THE U.S. CONSITUTION "TAKING CLAUSE"

99.  Plaintiff repeats and realleges all the allegations as set forth above as if fully incorporated herein.

100. The taking clause, which is found in the Fifth Amendment to the United States Constitution, prohibits the government from taking private property for public use without just compensation.  U.S. Const.amend. V.

101. The Takings Clause is applicable to state and local governments through the Fourteenth Amendment.  *Newark Cab Ass'n v. City of Newark*, 910 F.3d 146, 151 (3d Cir. 2018).

102. Regulatory taking occurs when a "regulation denies all economically beneficial or productive use" of a property interest.  *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1015 (1992).

103. "There are two types of regulatory takings: (1) takings per se or total takings, where the regulation denies all economically beneficial productive use of the property; and (2) partial takings that, though not rendering the property idle, require compensation." *Nekrilov v. City of Jersey City,* 45 F.4th 662, 669 (3d Cir. 20022).

104. To establish a taking clause violation in New Jersey, the following elements must generally be proven:

    a.  The government must have taken or damaged your property, including rental property;

    b.  The taking or damage must have been for a public use or purpose;

    c.  The taking or damage must have been without your consent; and

    d.  You must not have received just compensation for the taking or damage.

105. In addition to these elements, New Jersey courts have also considered factors such as the extent of the interference with your property rights, the foreseeability of the government's actions, and the character of the government's action (e.g., physical invasion, regulation, or restriction) when evaluating taking clause claims.

106. All such elements of the taking clause have been satisfied in our case.

107. The Township, as a government entity, has unambiguously taken the Plaintiff's property rights to use and enjoyment of the Property.

108. In this case, the Township took action, although wrongfully, under the premise that Plaintiff's use of the Property posed a threat to the public The Township's actions were without legitimate reasoning or legal purpose.

109. In this case, the Township took the property without the Plaintiff's consent.

110. As a result of the taking, the Plaintiff has not received just compensation.

111. Therefore, the Plaintiff is seeking legal action to recover the full value of the taking.

112. In essence, the Township's interference with Plaintiff's property rights amounts to a complete and total physical invasion couched in regulations and restrictive laws designed to interfere with Plaintiff's use and enjoyment of the Property.

113. Considering that the Plaintiff had already obtained inspections, been approved by the Township, and operated the business for an extended period, the Township's actions were not foreseeable.

114. As noted above, the Township and its agents used unfounded law to perpetuate intentional actions against Plaintiff.

115. During this time period, the Township and its agents pursued exorbitant actions against Plaintiff.

116. Multiple citations have been alleged by the Township and its agents, none of which have been shown to be substantial to deny Plaintiff use and enjoyment of the Property.

117. The Township and its agents' actions effectively resulted in the Plaintiff losing all use and value of the Property.

118. Plaintiff has lost all beneficial use of the Property.

119. Plaintiff, as a tenant, only possesses the right to use and enjoyment of the Property.

120. Absent the ability to do so, the Property has no beneficial use to the Plaintiff substantiating a Total Taking or Takings Per Se in accordance with a Regulatory Taking.

121. The Plaintiff also sufficiently sustains a partial-taking claim.

122. In accordance with *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104 (1978), partial-taking factors require a plaintiff to show: "(1) the economic impact of the

regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action."

123.  Plaintiff satisfies all such elements of a partial taking.

124. Regarding the first element, the economic impact of the regulation on the Plaintiff is substantial because absent the Plaintiff's adherence to the same, the Property is absolutely no substantial value as Plaintiff can not operate on the Property as its business intended.

125.  Regarding the second element, the regulation has substantially interfered with distinct investment-backed expectations as the regulation on its face places requirements on the premises that the landlord is unwilling to satisfy.

126.  As such, Plaintiff argues and contends that the Property and value of the lease is substantially decreased as the Plaintiff can no longer utilize the Property for it's intended purposes in the Properties current condition of not being compliant with said regulations.

127.  Absent Plaintiff's intended business use the Property is no longer able to generate the income needed to

maintain the lease which did not account for such diminished use of the Property.

128.   Regarding the third element, the imposing of the regulation by Franklin Township was applied arbitrarily and done to harass or intimidate the Plaintiff.

129.   As such, Franklin Township should not be able to hide being such action and escape compensating the Plaintiff for such taking.

**WHEREFORE,** Plaintiff demands judgment against Defendants, **THE TOWNSHIP OF FRANKLIN, NEW JERSEY; VINCENT LUPO, CONSTRUCTION MANAGER, THE TOWNSHIP OF FRANKLIN; DOUG KOWALSKY, FIRE INSPECTOR/FIRE MARSHALL, THE TOWNSHIP OF FRANKLIN; JOHN HAUSS, DIRECTOR OF FIRE PREVENTION, THE TOWNSHIP OF FRANKLIN; VINCENT ANDREW DOMINACH, JR., ECONOMIC DEVELOPMENT DIRECTOR, THE TOWNSHIP OF FRANKLIN; SOPANA SHAH, TOWNSHIP ATTORNEY, THE TOWNSHIP OF FRANLKIN; JOHN DOE, #1 – 50; AND MARY ROE, #1 – 50,** in the form of permanent injunctive relief to prevent further irreparable harm and any retaliation efforts together with money damages assigned individually, jointly, severally, or in the alternative damages, treble damages, together with lawful interest, plus Plaintiff's reasonable attorney's fees and litigation expenses as allowed by law, and for all other just and proper relief the court deems appropriate. Additionally, Plaintiff seeks an injunction against all the

above-named Defendants to prevent them from engaging in similar activities in the future.

    **i.  5th AMENDMENT "JUST COMPENSATION"**

1.    Plaintiff repeats and realleges all allegations as set forth in the proceeding paragraphs as if fully set forth herein.

2.    The Fifth Amendment to the United States Constitution requires that when the government takes private property, it must provide "just compensation" to the Property owner and any tenants.

3.    Just compensation is typically understood to mean the reasonable value of the property at the time of the taking.

4.    In determining reasonable value, a number of factors may be considered, including the property's location, size, condition, zoning and land use restrictions, and any income or potential income that the property generates.

5.    Just compensation may also include damages for any loss of business profits, relocation expenses, or other costs associated with the taking.

6.    In our matter, the Plaintiff has spent thousands of dollars to satisfy all the penalties and fees imposed by the Township.

7.     While the Township continued to unjustly enforce ordinances against Plaintiff, there was no reasonable alternative use of the Property.

8.     For any loss of business profits, relocation expenses, or other costs associated with the taking of the Property, the Township has not compensated Plaintiff.

9.     As noted above, Plaintiff is entitled to such compensation.

**WHEREFORE,** Plaintiff demands judgment against Defendants; **THE TOWNSHIP OF FRANKLIN, NEW JERSEY; VINCENT LUPO, CONSTRUCTION MANAGER, THE TOWNSHIP OF FRANKLIN; DOUG KOWALSKY, FIRE INSPECTOR/FIRE MARSHALL, THE TOWNSHIP OF FRANKLIN; JOHN HAUSS, DIRECTOR OF FIRE PREVENTION, THE TOWNSHIP OF FRANKLIN; VINCENT ANDREW DOMINACH, JR., ECONOMIC DEVELOPMENT DIRECTOR, THE TOWNSHIP OF FRANKLIN; SOPANA SHAH, TOWNSHIP ATTORNEY, THE TOWNSHIP OF FRANLKIN; JOHN DOE, #1 – 50; AND MARY ROE, #1 – 50,** in the form of permanent injunctive relief to prevent further irreparable harm and any retaliation efforts together with money damages assigned individually, jointly, severally, or in the alternative damages, treble damages, together with lawful interest, plus Plaintiff's reasonable attorney's fees and litigation expenses as allowed by law, and for all other just and proper relief the court

deems appropriate.  Additionally, Plaintiff seeks an injunction against all the above-named Defendants to prevent them from engaging in similar activities in the future.

### COUNT II

**XIV. AMENDMENT OF THE U.S. CONSTITUTION
"EQUAL PROTECTION CLAUSE"
42 U.S.C. § 1983**

130. Plaintiff repeats and realleges the allegations set forth above as if fully incorporated herein.

131. The Equal Protection Clause is a provision of the Fourteenth Amendment to the United Sates Constitution that prohibits states from denying any person within its jurisdiction equal protection of the law.

132. This clause applies to all states, including New Jersey.

133. Under the Equal Protection Clause, the government must treat all individuals similarly situated in a similar manner.

134. The government cannot discriminate against individuals based on their race, ethnicity, gender, religion, or other protected characteristics.

135. In this matter, the Township sought governmental actions against Plaintiff due to claims and allegations of ordinance violations.

31

136. The Township did not initiate such actions against Plaintiff until it became aware that a "Boogie Nights" event was marketed as hosted at the Plaintiff's property.

137. The Township produced a printout of a "Boogie Nights" flyer as an example of their cause of action against Plaintiff.

138. In the 1970s, during the disco era, the term "boogie nights" originated.

139. It was popularized by the 1997 American film "Boogie Nights." African American culture and music heavily influenced the disco era and the term "boogie," and disco music was heavily popularized by African American artists.

140. Therefore, the Township's actions must be interpreted as an attempt to stereotype African American culture and music.

141. Therefore, the Township's actions must be interpreted as an attempt to suppress African American culture and music.

142. There is no doubt that this is an example of discrimination and prejudice against African Americans.

143. This type of behavior is unacceptable and must not be tolerated.

144. Everyone should receive the same respect regardless of their background or culture.

32

145. We all deserve to be treated equally and fairly. The Township of Franklin effectuated governmental proceedings against Plaintiff.

146. The Township's actions against Plaintiff are directly in conflict with the intent of the Equal Protection Clause.

147. The Township targeted Plaintiff on the basis of Plaintiff's race and ethnicity.

148. Under the Equal Protection Clause, both of these characteristics are protected.

149. Plaintiff was harassed, intimidated, bullied and threatened by the Township due to Plaintiff's race and ethnicity.

150. This resulted in the Township enacting and enforcing unwarranted alleged ordinance violations against Plaintiff.

151. Plaintiff did find a similarly situated business as noted in the above Statement of Facts.

152. Such similarly situated business was Bonkerz, a non-African American owned business.

153. When Plaintiff inquired into a OPRA request for such facility and business of Bonkerz, it was established that Bonkerz was not subjected to the same regulations as Plaintiff was subject to despite them being similarly situated entities.

154. Such difference in treatment is attributable to their difference in race which establishes discrimination in our matter.

**WHEREFORE,** Plaintiff demands judgment against Defendants, **THE TOWNSHIP OF FRANKLIN, NEW JERSEY; VINCENT LUPO, CONSTRUCTION MANAGER, THE TOWNSHIP OF FRANKLIN; DOUG KOWALSKY, FIRE INSPECTOR/FIRE MARSHALL, THE TOWNSHIP OF FRANKLIN; JOHN HAUSS, DIRECTOR OF FIRE PREVENTION, THE TOWNSHIP OF FRANKLIN; VINCENT ANDREW DOMINACH, JR., ECONOMIC DEVELOPMENT DIRECTOR, THE TOWNSHIP OF FRANKLIN; SOPANA SHAH, TOWNSHIP ATTORNEY, THE TOWNSHIP OF FRANLKIN; JOHN DOE, #1 – 50; AND MARY ROE, #1 – 50,** in the form of permanent injunctive relief to prevent further irreparable harm and any retaliation efforts together with money damages assigned individually, jointly, severally, or in the alternative damages, treble damages, together with lawful interest, plus Plaintiff's reasonable attorney's fees and litigation expenses as allowed by law, and for all other just and proper relief the court deems appropriate. Additionally, Plaintiff seeks an injunction against all the above-named Defendants to prevent them from engaging in similar activities in the future.

<u>**COUNT III**</u>
**NEW JERSEY CIVIL RIGHTS ACT**
**"EQUAL PROTECTION CLAUSE"**
**42 U.S.C. § 1983**

155. Plaintiff repeats and realleges the allegations set forth above as if fully incorporated herein.

156. The Equal Protection Clause is a provision of the Fourteenth Amendment to the United Sates Constitution that prohibits states from denying any person within its jurisdiction the equal protection of the law.

157. This clause applies to all states, including New Jersey.

158. The New Jersey Civil Rights Act (hereinafter referred to as "NJCRA") protects against the deprivation of any rights, privileges, or immunities secured by New Jersey's Constitution and law.

159. To establish a violation of the NJCRA, a plaintiff must show:

> 1. that the New Jersey State Constitution of laws of New Jersey conferred a substantive rights;
> 2. the defendant deprived the plaintiff of this right; and
> 3. the defendant was acting under color of law when doing so.
>
> Tumpson v. Farina, 218 N.J. 450 (2014). The NJCRA "is interpreted as analogous to §1983." Szemple v. Corr.Med.Servs.Inc., 493 F.App'x 238, 241 (3d Cr.2012).

160. In this matter, Franklin Township sought governmental actions against Plaintiff due to claims and allegations of ordinance violations.

161. Franklin Township did not initiate such actions against Plaintiff until it became aware that a "Boogie Nights" event was

marketed as being hosted at the Plaintiff's property.

162. Franklin Township produced a printout of a "Boogie Nights" flyer as an example of their cause of action against Plaintiff.

163. As noted above, in the 1970s, during the disco era, the term "boogie nights" originated. It was popularized by the 1997 American film "Boogie Nights."

164. African American culture and music heavily influenced the disco era and the term "boogie," and disco music was heavily popularized by African American artists.

165. Therefore, Franklin Township's actions are an attempt to stereotype African American culture and music.

166. The Township's actions are an attempt to suppress African American culture and music.

167. There is no doubt that this is an example of discrimination and prejudice against African Americans.

168.  This type of behavior is unacceptable and must not be tolerated.

169. Franklin Township targeted Plaintiff based on Plaintiff's race and ethnicity.

170. As noted in the preceding count, Bonkerz was a similarly situated non-African American business which did not face such treatment by Franklin Township.

171. In addition, there is a valid Monell claim against Franklin Township.

172. A Monell claim refers to a legal cause of action that arises from a Supreme Court decision in Monell v. Department of Social Services of the City of New York, 436 U.S. 658 (1978).

173. A Monell claim allows individuals to bring a lawsuit against a local government entity, such as a municipality or a country, for civil rights violations committed by its employees.

174. In New Jersey, Monell claims are based on the New Jersey Civil Rights Act (NJCRA), which provides individuals with protection against the deprivation of their civil rights by state or local entities.

175. Under the NJCRA, individuals can file a lawsuit for damages if they have been subject to any of the following:

> 1. Discrimination or unequal treatment based on race,
> religion, gender, sexual orientation, disability, or other protected characteristics.
> 2. Violation of their right to be free from excessive use of force by law enforcement officers.
> 3. Violation of their right to be free from false arrest or false imprisonment.
> 4. Violation of their right to be free from retaliation for exercising their civil rights.

176. To succeed in a Monell claim in New Jersey, the plaintiff must establish the following elements:

> 1. The defendant is a local government entity or an official acting within the scope of their duties.
> 2. The defendant violated the plaintiff's rights under the NJCRA.
> 3. The defendant's policies, customs, or practices were a driving force behind the violation of the plaintiff's rights.
> 4. The defendant's policies, customs, or practices were the result of deliberate indifference to the plaintiff's rights.

177. In our matter, Plaintiffs have arisen to the standard of establishing a valid Monell claim against the Township.

178. Plaintiffs firmly contend and allege there was discrimination or unequal treatment based on race.

179. This is evident as the Defendants only persisted to harass and ultimately shutdown Plaintiffs' business operations after they became aware of an alleged hosting of a "Boogie Nights" event at Plaintiffs Property (see the argument discussed above).

180. In establishing the Monell claim the Defendants are and were at all times a local government entity or an official acting within the scope of their duties under cover of Franklin Township.

181. The Defendants violated Plaintiffs' rights under the NJCRA by subjecting the Plaintiffs to discrimination or

unequal treatment due to their race as African Americans within the community.

182. The Defendants' practices couched in terms use variance and violations of uniform fire code were the driving force and resulted in deliberate indifference to the Plaintiffs' rights.

183. Again, further drawing establishing that such violations were ultimately used to target and ultimately shut down the Plaintiffs' business operations at the Property due to Plaintiff's race.

**WHEREFORE,** Plaintiff demands judgment against Defendants; **THE TOWNSHIP OF FRANKLIN, NEW JERSEY; VINCENT LUPO, CONSTRUCTION MANAGER, THE TOWNSHIP OF FRANKLIN; DOUG KOWALSKY, FIRE INSPECTOR/FIRE MARSHALL, THE TOWNSHIP OF FRANKLIN; JOHN HAUSS, DIRECTOR OF FIRE PREVENTION, THE TOWNSHIP OF FRANKLIN; VINCENT ANDREW DOMINACH, JR., ECONOMIC DEVELOPMENT DIRECTOR, THE TOWNSHIP OF FRANKLIN; SOPANA SHAH, TOWNSHIP ATTORNEY, THE TOWNSHIP OF FRANLKIN; JOHN DOE, #1 – 50; AND MARY ROE, #1 – 50,** in the form of permanent injunctive relief to prevent further irreparable harm and any retaliation efforts together with money damages assigned individually, jointly, severally, or in the alternative damages, treble damages, together with lawful interest, plus Plaintiff's reasonable attorney's fees and litigation expenses as allowed

by law, and for all other just and proper relief the court deems appropriate.  Additionally, Plaintiff seeks an injunction against all the above-named Defendants to prevent them from engaging in similar activities in the future.

### COUNT IV
### TITLE VI OF THE CIVIL RIGHTS ACT OF 1964
### 42 U.S.C. § 2000d et seq.

184. Plaintiff repeats and realleges all allegations as set forth in the preceding paragraphs as if fully set forth herein.

185. Title VI of the Civil Rights Act of 1964 is a federal law that prohibits discrimination based on race, color, or national origin in programs and activities that receive federal financial assistance.

186. As a federal law, it applies to all states, including New Jersey.

187. Under New Jersey law, Title VI of the Civil Rights Act of 1964 is enforced by the New Jersey Division on Civil Rights (NJDCR), which is part of the New Jersey Attorney General's Office.

188. There can be little doubt that the Township of Franklin is a recipient of federal financial assistance, including those related to education, transportation, healthcare, housing, and social services.

40

189. The Township of Franklin is therefore subject to Title VI of the Civil Rights Act of 1964.

190. Thus, the Township of Franklin is prohibited from discriminating on the basis of race, color, or national origin.

191. Our case involves a violation of federal law by the Township.

192. The Township of Franklin is liable for damages caused by this violation.

193. We therefore seek a court order compelling the Township to comply with Title VI and to pay damages for any harm caused by the violation.

194. Plaintiff was singled out by Franklin Township and its agents, and targeted by Franklin Township and its agents on account of the Plaintiff's status as a minority.

195. As a result of racial and ethnic discrimination, the Township used threats, harassment, and vested governmental powers to enforce ordinance violations against Plaintiff.

**WHEREFORE,** Plaintiff demands judgment against Defendants, **THE TOWNSHIP OF FRANKLIN, NEW JERSEY; VINCENT LUPO, CONSTRUCTION MANAGER, THE TOWNSHIP OF FRANKLIN; DOUG KOWALSKY, FIRE INSPECTOR/FIRE MARSHALL, THE TOWNSHIP OF FRANKLIN; JOHN HAUSS, DIRECTOR OF FIRE PREVENTION, THE TOWNSHIP OF FRANKLIN; VINCENT ANDREW DOMINACH, JR., ECONOMIC**

41

**DEVELOPMENT DIRECTOR, THE TOWNSHIP OF FRANKLIN; SOPANA SHAH, TOWNSHIP ATTORNEY, THE TOWNSHIP OF FRANLKIN; JOHN DOE, #1 – 50; AND MARY ROE, #1 – 50,** in the form of permanent injunctive relief to prevent further irreparable harm and any retaliation efforts together with money damages assigned individually, jointly, severally, or in the alternative damages, treble damages, together with lawful interest, plus Plaintiff's reasonable attorney's fees and litigation expenses as allowed by law, and for all other just and proper relief the court deems appropriate.  Additionally, Plaintiff seeks an injunction against all the above-named Defendants to prevent them from engaging in similar activities in the future.

**COUNT V**
**XIV. AMENDMENT OF THE U.S. CONSTITUTION**
**"DUE PROCESS CLAUSE"**
**42 U.S.C. § 1983**

196. Plaintiff repeats and realleges all allegations as set forth in the preceding paragraphs as if fully set forth herein.

197. The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law."

198. This clause applies to the states, and it is intended to ensure that individuals are protected from

arbitrary or unfair government actions that could deprive them of basic rights without the proper legal procedures being followed.

199. Procedural due process requires that the government follow certain legal procedures when it seeks to deprive an individual of life, liberty, or property.

200. The procedures must be fair and impartial.

201. Substantive due process requires that the government's actions be reasonable and not arbitrary or capricious.

202. In New Jersey, the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution is incorporated into state law and is enforced through the New Jersey Constitution.

203. The Defendants are New Jersey state government actors.

204. The Plaintiff is a citizen of the United States as well as a business entity located in the state of New Jersey.

205. Plaintiff was not given an adequate opportunity to defend against governmental action nor was Plaintiff given the opportunity to cure any alleged violations.

206. Consequently, Plaintiff lost use and enjoyment of the Property as well as its intended business use and benefit.

207. Furthermore, the Plaintiff was not afforded due process and was not given the opportunity to defend.

208. If Plaintiff had been given the opportunity to defend, Plaintiff would have done so in accordance with the law.

209. Consequently, Plaintiff was denied due process, resulting in the Defendants taking away Plaintiff's liberties and property.

**WHEREFORE,** Plaintiff demands judgment against Defendants, **THE TOWNSHIP OF FRANKLIN, NEW JERSEY; VINCENT LUPO, CONSTRUCTION MANAGER, THE TOWNSHIP OF FRANKLIN; DOUG KOWALSKY, FIRE INSPECTOR/FIRE MARSHALL, THE TOWNSHIP OF FRANKLIN; JOHN HAUSS, DIRECTOR OF FIRE PREVENTION, THE TOWNSHIP OF FRANKLIN; VINCENT ANDREW DOMINACH, JR., ECONOMIC DEVELOPMENT DIRECTOR, THE TOWNSHIP OF FRANKLIN; SOPANA SHAH, TOWNSHIP ATTORNEY, THE TOWNSHIP OF FRANLKIN; JOHN DOE, #1 – 50; AND MARY ROE, #1 – 50,** in the form of permanent injunctive relief to prevent further irreparable harm and any retaliation efforts together with money damages assigned individually, jointly, severally, or in the alternative damages, treble damages, together with lawful interest, plus Plaintiff's reasonable attorney's fees and litigation expenses as allowed by law, and for all other just and proper relief the court deems appropriate.  Additionally, Plaintiff

seeks an injunction against all the above-named Defendants to prevent them from engaging in similar activities in the future.

**COUNT VI**
**TORTIOUS INTERFERENCE WITH ECONOMIC ADVANTAGE**

210. Plaintiff repeats and realleges all allegations set forth in the proceeding paragraphs as if fully set forth herein.

211. Tortious interference with business purpose is a legal claim that arises when a third party intentionally interferes with a business relationship or contract, causing economic harm to one of the parties involved.

212. In New Jersey, to establish a claim for tortious interference with economic advantage, a plaintiff must prove the following elements:

> a.    a "reasonable expectation of economic advantage";
> b.   interference done intentionally and with malice;
> c.   injury, in the sense of the loss of perspective gain; and
> d.   damages.
>
> *Austar Int'l Ltd. V. AustarPharma LLC*, 425 F.Supp. 3d 336, 358 (D.N.J. 2019).

213. All of the above elements are present in our matter.

214. There is a valid business relationship between the Plaintiff and a third-party clients who rent the Plaintiff's facilities to host events for payment to the Plaintiff.

215.  This business exchange is the expectation of economic advantage.

216. The defendants were aware of the above business relationship as they were well acquainted with the Plaintiff's business model and the fact that the facility was rented out on a regular basis for events.

217. Plaintiff was deliberately targeted, as discussed above, by the defendants for the purpose of interfering with Plaintiff's business relationships, as detailed above, and ultimately shut down Plaintiff's ability to conduct such business.

218.  Malice was present as it was done with the intent to racially target an African American owned business.

219.  Plaintiff was injured that they loss all perspective gain to have realized from the operation and maintenance of their business.

220.  Damages suffered by the Plaintiff include loss of business profits, relocation expenses, and other costs associated with rebranding and salvaging their client list.

221. There is a clear violation of the Plaintiff's rights and tortious interference with economic advantage on the part of the Defendants.

222. In addition to seeking compensation, the Plaintiff is seeking an injunction against the Defendants to prevent them from engaging in similar activities in the future.

223. The Plaintiff is confident that the court will find in Plaintiff's favor and grant the requested injunction.

224. Plaintiff is committed to seeing the case through to a successful conclusion.

**WHEREFORE,** Plaintiff demands judgment against Defendants, **THE TOWNSHIP OF FRANKLIN, NEW JERSEY; VINCENT LUPO, CONSTRUCTION MANAGER, THE TOWNSHIP OF FRANKLIN; DOUG KOWALSKY, FIRE INSPECTOR/FIRE MARSHALL, THE TOWNSHIP OF FRANKLIN; JOHN HAUSS, DIRECTOR OF FIRE PREVENTION, THE TOWNSHIP OF FRANKLIN; VINCENT ANDREW DOMINACH, JR., ECONOMIC DEVELOPMENT DIRECTOR, THE TOWNSHIP OF FRANKLIN; SOPANA SHAH, TOWNSHIP ATTORNEY, THE TOWNSHIP OF FRANLKIN; JOHN DOE, #1 – 50; AND MARY ROE, #1 – 50,** in the form of permanent injunctive relief to prevent further irreparable harm and any retaliation efforts together with money damages assigned individually, jointly, severally, or in the alternative damages, treble damages, together with lawful interest, plus Plaintiff's reasonable attorney's fees and litigation expenses as allowed by law, and for all other just and proper relief the court deems appropriate. Additionally, Plaintiff seeks an injunction against all the above-named Defendants to

47

prevent them from engaging in similar activities in the future.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all triable issues raised in the various Counts of the Complaint.

## **DESIGNATION OF TRIAL COUNSEL**

Plaintiff hereby designates Adrian J. Johnson, Esq., as trial counsel in this matter.

Dated:  11 March 2023                    Johnson & Associates, P.C.
                                         Attorneys for Plaintiffs
                                         s/Adrian J. Johnson, Esq.
                                         Adrian J. Johnson, Esq.

48

UNITED STATE DISTRICT COURT
DISTRICT OF NEW JERSEY

JOHNSON & ASSOCIATES, PC
BY: ADRIAN J JOHNSON, ESQ.
(ATTORNEY ID: 000592012)
485C US Highway 1 South, Suite 100
ISELIN, NJ 08830
ATTORNEYS FOR PLAINTIFFS

| | |
|---|---|
| DEEJAIZ LLC D/B/A SUPREME EVENTZ and SUPREME PRODUCTIONZ, JASON ROBINSON, and DANYALE ROBINSON,<br><br>     Plaintiff(s),<br><br>v.<br><br>THE TOWNSHIP OF FRANKLIN, NEW JERSEY; VINCENT LUPO, CONSTRUCTION OFFICIAL, THE TOWNSHIP OF FRANKLIN; DOUG KOWALSKY, FIRE INSPECTOR/FIRE MARSHALL, THE TOWNSHIP OF FRANKLIN; JOHN HAUSS, DIRECTOR OF FIRE PREVENTION, THE TOWNSHIP OF FRANKLIN; VINCENT ANDREW DOMINACH, JR., ECONOMIC DEVELOPMENT DIRECTOR, THE TOWNSHIP OF FRANKLIN; SAPANA SHAH, TOWNSHIP ATTORNEY, THE TOWNSHIP OF FRANLKIN; JOHN DOE, #1 – 50; AND MARY ROE, #1 – 50,<br>     Defendant(s). | Case No.: 3:23-CV-03192-MAS-RLS<br><br><br>PLAINTIFF VERIFICATION |

**JASON ROBINSON** deposes and says:

   I am the Plaintiff, in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to the matters which are therein alleged on information and belief, and as to those matters, I believe it to be true. I declare under penalty of perjury that the foregoing is true and correct.

Dated:  11 March 2023      s/ Jason Robinson
              Jason Robinson
              Plaintiff

UNITED STATE DISTRICT COURT
DISTRICT OF NEW JERSEY

JOHNSON & ASSOCIATES, PC
BY: ADRIAN J JOHNSON, ESQ.
(ATTORNEY ID: 000592012)
485C US Highway 1 South, Suite 100
ISELIN, NJ 08830
ATTORNEYS FOR PLAINTIFFS

| | |
|---|---|
| DEEJAIZ LLC D/B/A SUPREME EVENTZ and SUPREME PRODUCTIONZ, JASON ROBINSON, and DANYALE ROBINSON,<br><br>              Plaintiff(s),<br><br>v.<br><br>THE TOWNSHIP OF FRANKLIN, NEW JERSEY; VINCENT LUPO, CONSTRUCTION OFFICIAL, THE TOWNSHIP OF FRANKLIN; DOUG KOWALSKY, FIRE INSPECTOR/FIRE MARSHALL, THE TOWNSHIP OF FRANKLIN; JOHN HAUSS, DIRECTOR OF FIRE PREVENTION, THE TOWNSHIP OF FRANKLIN; VINCENT ANDREW DOMINACH, JR., ECONOMIC DEVELOPMENT DIRECTOR, THE TOWNSHIP OF FRANKLIN; SAPANA SHAH, TOWNSHIP ATTORNEY, THE TOWNSHIP OF FRANLKIN; JOHN DOE, #1 – 50; AND MARY ROE, #1 – 50,<br>              Defendant(s). | Case No.: 3:23-CV-03192-MAS-RLS<br><br>PLAINTIFF VERIFICATION |

**DANYALE ROBINSON** deposes and says:

      I am the Plaintiff, in the above-entitled action. I have read the foregoing Complaint and know the contents thereof.  The same is true of my own knowledge, except as to the matters which are therein alleged on information and belief, and as to those matters, I believe it to be true.  I declare under penalty of perjury that the foregoing is true and correct.

Dated:  11 March 2023           s/ Danyale Robinson
                                    Danyale Robinson
                                    Plaintiff