NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

DEEJAIZ LLC, *et al.*,

      Plaintiffs,

      v.

TOWNSHIP OF FRANKLIN, *et al.*,

      Defendants.

Civil Action No. 23-3192 (MAS) (RLS)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

   This matter comes before the Court upon Defendants the Township of Franklin (the "Township"), Vincent Lupo ("Lupo"), Doug Kowalsky ("Kowalsky"), John Hauss ("Hauss"), Vincent Andrew Dominach, Jr. ("Dominach"), and Sapana Shah's ("Shah") (collectively "Defendants") motion to dismiss (ECF No. 23) Plaintiffs Deejaiz LLC D/B/A Supreme Eventz and Supreme Productionz ("Deejaiz"), Jason Robinson, and Danyale Robinson's (collectively "Plaintiffs") Amended Complaint (ECF No. 19). The Court has carefully considered the parties' submissions and reaches its decision without oral argument under Local Civil Rule 78.1(b). For the reasons below, Defendants' motion is granted.

I.  **BACKGROUND**

   Deejaiz is an "African-American/Minority owned business consisting of a social meeting and event space" which "hosted various social events, receptions, bar/bat mitzvahs, birthday parties[,] and other private gatherings…" (Am. Compl. ¶ 1, ECF No. 19.) Defendants are the

Township and various of its officials. (*Id.* ¶¶ 5-6.) On February 4, 2021, Plaintiffs filed for and obtained a use variance approval from the Township. (*Id.* ¶ 2.) When seeking the variance, Plaintiffs presented testimony regarding the nature and use of the building that Deejaiz would operate out of (the "Premises"). (*Id.*) Some testimony was presented that guests would be allowed to cater in food and alcohol, and discussion was had as to the types of parties and events the Premises would host. (*Id.*) Ultimately, the Township approved a variance, and the Premises was designated an A-3 use group.[1] (*Id.* ¶ 4.)

On February 8, 2022, Kowalksy, fire marshal for the Township, advised Plaintiffs that he needed to inspect the Premises. (*Id.* ¶ 20.) On February 9, 2022, Kowalsky informed Plaintiffs that Hauss, the Township's Director of Fire Prevention, was concerned that Plaintiffs were hosting events at the Premises. (*See id.* ¶ 22.) Plaintiffs responded to Hauss's concern with proof that they received prior approvals from the Township to host events. (*See id.* ¶¶ 22-23.) After receipt of Plaintiffs' proof, Kowalsky advised Plaintiffs that someone "dropped the ball" and that he would investigate to see what needed to be done from a "fire safety angle." (*Id.* ¶¶ 24-25.)

On March 9, 2022, the Township, through its Fire Prevention Department, "issued a Notice of Imminent Hazard and Order to Take Corrective Action" (the "Notice"), which was signed by

---

[1] Plaintiffs also allege they were granted a certification of occupancy for a B use group. (Am. Compl. ¶ 6.) This certificate "indicates that health department approval would be needed to bring food onsite." (*Id.* ¶ 7.) Plaintiff disputes this characterization, alleging that Lupo stated to Plaintiffs that "if you so much as open a bottled water," you are an A-use group. (*Id.* ¶ 10; *see also id.* ¶ 9 (alleging further that "[t]he B-[u]se group designation would negate the allowance of food on site or the need to contact the [h]ealth [d]epartment, as . . . allowing consumption of food and beverage on the [P]remises would place [the Premises] in an A-2 [u]se group per guidelines").)

2

Hauss. (*Id.* ¶ 27.) The Notice "mandated that Plaintiff[s] cease operations/events" at the Premises by Noon that same day. (*Id.*) No Township Construction Official signed the Notice. (*Id.* ¶ 31.)

After receipt of the Notice, Plaintiff immediately filed an appeal with the Somerset County Construction Board of Appeals and requested a meeting with Township Officials to ensure Plaintiffs' business was not affected.[2] (*Id.* ¶ 32.) At a meeting with the Township, Hauss "bombarded [Plaintiffs] with accusations[,]" and Plaintiffs were instructed to fix identified problems unrelated to the Premises. (*See id.* ¶¶ 35-36 (providing that Defendants demanded that Plaintiffs fix items "not related to the rented space, [but] rather [related to] other parts of the building").) The Township's insistence that Plaintiffs stop their business to fix the Township's concerns grew primarily from a flyer in the Township's possession which purported to show that Plaintiffs would be hosting a "Bougie Nights" event that was "not approved, promoted[,] or allowed by Plaintiff[s] and did not occur." (*Id.* ¶¶ 38-40.)

Subsequent Plaintiffs' meeting with the Township, Lupo "granted a variant to the . . . Notice which allowed Plaintiff[s] to continue holding events at the [P]remises provided that, as recommended by [Plaintiffs' Fire Code expert], there were two . . . Fire Watch professionals present at every event and that a detailed list of all such events be reviewed and approved by

---

[2] To this end, Plaintiffs seemed to be operating under the assumption that the Premises was designated an A-2 use, although they were aware they were operating under an occupancy placard designating the Premises as an A-3 use. (*See* Am. Compl. ¶ 32 (requesting a meeting with Township officials to see how Plaintiffs' might remove any "imminent perils or hazards" as required by the Notice, "if any, as well as implement appropriate measures to comply with *A-2* [u]se group requirements" (emphasis added)); *but see* Am. Compl. ¶ 6 (providing that Plaintiffs were granted certification of occupancy with a B use designation); *id.* ¶ 4 (suggesting Plaintiffs were offered a variance to operate as an A-3 use).)

. . . Hauss since" these measures "would eliminate any alleged imminent peril or hazard." (*Id.* ¶ 41.)

On March 16, 2022, Hauss and Lupo visited the Premises and requested minor repairs. (*Id.* ¶ 42.) Plaintiffs satisfactorily completed the requested repairs to the Premises.[3] (*Id.*) On March 21, 2022, Dominach sent Plaintiffs an email correspondence suggesting he would try and find an alternate location for Plaintiffs to operate their business. (*Id.* ¶¶ 43-44.) As of April 7, 2022, however, Dominach indicated to Plaintiffs that he had been unsuccessful in finding a place for Plaintiffs to relocate. (*Id.* ¶ 46.) At a June 8, 2022 hearing, Dominach would testify that "[t]here were many other spaces available for Plaintiff to occupy[,]" but they were not in Plaintiffs' budget.[4] (*Id.* ¶¶ 47-48, 56.)

Plaintiffs also independently conducted a search for a new location to operate their business. (*See id.* ¶ 50.) In particular, Plaintiffs expressed interest in a "non-African American owned entity" formerly known as Bonkerz. (*Id.*) Plaintiffs "requested an [Open Public Records Act] request for said location" but it was repeatedly ignored. (*Id.* ¶ 51.) Eventually, after filing a Complaint with the New Jersey Government Records Council, however, Plaintiffs' OPRA request was granted. (*Id.* ¶¶ 52-60.) Upon review of Bonkerz, it became apparent that while it was marketed as an Arcade and Restaurant, it was classified as an A-3 use, like the Premises, instead

---

[3] Plaintiff further alleges that during this inspection, Hauss and Lupo pointed out other concerns with the building that were unrelated to the Premises. (Am. Compl. ¶ 42.) These concerns, Plaintiffs allege, were the responsibility of the landlord. (*Id.*) Plaintiff maintains that Shah later cited some of these concerns when revoking Plaintiffs' right to operate. (*Id.*)

[4] Plaintiffs aver that they "never discussed a budget with . . . Dominach, and [that] he admitted the same in the [June 8] hearing." (Am. Compl. ¶ 57.) Plaintiff maintains that Dominach's deceitfulness is "[c]learly evidence of bias, racial or otherwise, directed at [Plaintiffs]." (*Id.* ¶ 59.)

of the required A-2 use that Plaintiffs were instructed an establishment must be in order to serve food. (*See id.* ¶¶ 62-63.)[5]

On April 11, 2022, Plaintiffs received a letter from Shah, the Township's attorney, outlining several concerns the Township had with the use of the Premises. (*See id.* ¶ 91.) On May 22, 2022,[6] despite complying with all the Township's requirements and the variant allowed by Lupo, the Township shut down Plaintiffs' business. (*Id.* ¶ 94.) This was done despite Plaintiff's good faith attempt to meet with the Township in an effort to provide updates on progress that was being made at the Premises. (*Id.*)

On February 1, 2023, Plaintiffs served a demand letter on the Township related to a Notice of Tort Claim Plaintiffs filed against the Township on June 6, 2022. (*Id.* ¶ 96.) On February 21, 2023, Plaintiffs received correspondence from the Township's claims administrator that Plaintiffs' Notice of Tort Claim was denied on November 22, 2022. (*Id.* ¶ 97.)

On June 12, 2023, after receiving the claims administrator's correspondence, Plaintiffs filed their initial Complaint in this matter. (ECF No. 1.) On February 8, 2024, this Court dismissed all of Plaintiffs' claims without prejudice after Defendants initially moved to dismiss. (ECF No. 17.) Plaintiffs filed an Amended Complaint on March 11, 2024.[7] (ECF No. 19.) Defendants again

---

[5] The Court notes that it does not recite Plaintiffs' allegations in paragraphs 63-90 because they are an amalgamation of rhetorical questions, legal argument, or reframing of factual allegations that Plaintiffs already set forth. (*See* Am. Compl. ¶¶ 63-90.) Instead, the Court sets forth only Plaintiffs' plausible, non-conclusory factual allegations.

[6] Just before the Township's decision, Plaintiffs amended their appeal to the Construction Board of Appeals, and a hearing was scheduled for June 8, 2022. (*Id.* ¶ 95.)

[7] The Court notes that Plaintiffs did not timely file the Amended Complaint. (*See* Order, ECF No. 18 (granting Plaintiffs 30 days from February 8, 2024 to file an amended complaint); Am. Compl. (filing the Amended Complaint on March 11, 2024, more than 30 days after the Court's Order).) While the Court will consider Plaintiffs' claims, Plaintiffs are advised that future court deadlines are to be adhered to or else Plaintiffs risk this Court declining to hear their claims.

moved to dismiss (ECF No. 23), Plaintiffs opposed (ECF No. 25), and Defendants replied (ECF No. 26).

## II.    **LEGAL STANDARD**

Federal Rule of Civil Procedure 8(a)(2)[8] "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff[.]" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "Although we must accept the allegations in the complaint as true, we are not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (en banc) (internal quotations omitted); *Iqbal*, 556 U.S. at 678 (holding that courts may ignore bare statements that "the-defendant-unlawfully-harmed-me" (citing *Twombly*, 550 U.S. at 555)). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fowler*, 578 F.3d at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v.*

---

[8] Unless otherwise specified, all references to "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

*United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

## III.    DISCUSSION

Plaintiffs in their Amended Complaint allege: (1) violation of the Fifth Amendment's Takings Clause and/or Just Compensation Clause; (2) violation of the Fourteenth Amendment's Equal Protection Clause and/or Due Process Clause; (3) violation of Title VI of the Civil Rights Act of 1964 ("Title VI") (collectively the "Federal Claims"); (4) violation of the New Jersey Civil Rights Act, Equal Protection Clause; and (5) tortious interference with economic advantage (collectively the "State Claims").[9] (Am. Compl. ¶¶ 99-224.) For the reasons outlined below, Plaintiffs' Federal Claims fail and this Court declines supplemental jurisdiction over the remaining State Claims.

### A.    The Federal Claims

Plaintiffs' Federal Claims arise under: (1) the Fifth Amendment; (2) the Fourteenth Amendment; and (3) Title VI. (Am. Compl. ¶¶ 99-154, 184-209.) Defendants seek to dismiss each theory of constitutional violation and claim that Plaintiffs bring. (*See generally* Defs.' Moving Br., ECF No. 23.) The Court addresses each in turn.

#### 1.    *Fifth Amendment*

Plaintiffs allege that Defendants violated the Fifth Amendment's Takings Clause and/or the Just Compensation Clause. (Am. Compl. ¶¶ 99-154.) Both of these theories of Fifth Amendment violation derive from a "regulatory taking" allegation, which Plaintiffs again aver in their Amended Complaint. (*Id.* ¶ 103.)

---

[9] Plaintiffs bring substantially the same claims as set forth in the original Complaint. (*See generally* Compl.; Am. Compl.) Plaintiffs only alter their theory of tortious interference. (Am. Compl. ¶¶ 210-24; Compl. ¶¶ 111-35.)

"There are two types of regulatory takings [a plaintiff can aver]: (1) takings per se or total takings, where the regulation denies all economically beneficial productive use of the property […]; and (2) partial takings that, though not rendering the property idle, require compensation under the test set forth in *Penn [Cent]. Transp. Co. v. City of New York*, 438 U.S. 104 . . . (1978)." *Nekrilov v. City of Jersey City*, 45 F.4th 662, 669 (3d Cir. 2022) (internal citations omitted). "[A] party challenging governmental action as an unconstitutional taking bears a substantial burden." *E. Enters. v. Apfel*, 524 U.S. 498, 523 (1998).

The Court's analysis can be brief because Plaintiffs offer no substantive amendments to their "total takings" or "partial takings" allegations. (*See generally* Am. Comp.) First, as to "total takings," in this Court's February 8, 2024 Opinion dismissing Plaintiffs' original Complaint (the "Previous Opinion"), this Court explained that Plaintiffs' contention that the eventual shutting down of Plaintiffs' business constitutes a taking by the Township is untenable. (Previous Op. 11-12, ECF No. 17.) This is because the Third Circuit and Supreme Court do not recognize a "general right to do business" protected by the Fifth Amendment. (*Id.* at 12 (quoting *Nekrilov*, 45 F.4th at 670 and *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675 (1999).) Here, again, Plaintiff maintains that the eventual closing of their business constitutes a "total taking." (Pls.' Opp'n Br. *19,[10] ECF No. 25 ("Here, in our matter, we have a 'regulatory taking' which has deprived the Plaintiffs of all economically beneficial use of the [Premises] . . . [t]his is evident as the Plaintiffs were eventually shut down and not permitted to operate their business out of the [Premises]. This complete termination of business operations rises to the standard of rendering the [Premises] valueless . . . thus effectuating a [total] taking.").) This

---

[10] All page numbers preceded by an asterisk refer to the page number in the ECF header.

contention was squarely rejected in the Previous Opinion, and this Court finds no reason to revisit its finding here again. (*See* Previous Op. 11-12.)

Second, this Court previously considered a "partial taking" theory on behalf of Plaintiffs and found that Plaintiffs could not sustain a partial taking theory on the facts alleged because "the Township was enforcing zoning laws and regulations for public health, safety, and welfare reasons . . . and therefore" the Township acted permissibly and did not need to compensate Plaintiffs for any partial taking, if one occurred at all. (Previous Op. 14); *see also Greenblatt v. Klein*, 634 F. App'x 66, 69 (3d Cir. 2015) (finding that a "legitimate enforcement" of a municipalities' laws and regulations does not constitute an impermissible regulatory taking). The Court made these findings despite Plaintiffs "not provid[ing] any specific arguments regarding their allegations for partial takings." (Previous Op. 13 (considering a partial taking theory on Plaintiffs behalf only "out of an abundance of caution.").) For a second consecutive time, however, Plaintiffs do not provide any specific arguments with respect to how the Notice or Defendants' actions constitute a partial taking. (*See generally* Pls.' Opp'n Br.) As such, for the reasons previously stated, any partial taking theory that Plaintiffs intend to bring in the Amended Complaint is rejected.

For the reasons set forth above, Plaintiffs fail to adequately allege a regulatory takings claim under the Fifth Amendment. Accordingly, Defendants' motion to dismiss Plaintiffs' Fifth Amendment claim is granted.

2.      *Fourteenth Amendment Claims*

Defendants next move to dismiss Plaintiffs' reasserted equal protection and due process claims brought under the Fourteenth Amendment. (*See generally* Defs.' Moving Br.) Defendants primarily contend that Plaintiffs' claims of race-based discrimination are conclusory and devoid of factual support. (*Id.* at 28-29.) The Court agrees.

a.      **Equal Protection**

"To state a claim under the Equal Protection Clause, . . . plaintiff[s] must allege that[:] (1) [they are] member[s] of a protected class; (2) that [they were] treated differently from similarly situated individual; and (3) that this disparate treatment was based on his or her membership in the protected class. *Kaul v. Christie*, 372 F. Supp. 3d 206, 254 (D.N.J. 2019) (citing *Kasper v. Cnty. of Bucks*, 514 F. App'x 210, 214-15 (3d Cir. 2013)). Plaintiffs have adequately alleged that they are members of a protected class (Am. Compl. ¶¶ 1-3), and that other similarly situated businesses were treated differently. (*Id.* ¶¶ 50, 61-63 (alleging that a separate business with "non-African American" owners received preferential treatment from the Defendants which Plaintiffs did not receive despite both being classified as A-3 uses).) Plaintiffs' claims, however, fail at the third element; Plaintiffs fail to adequately allege that the disparate treatment they identify was based on race.

To be clear, there are no non-conjectural allegations in the Amended Complaint that may reasonably be construed to suggest that Defendants acted with a discriminatory intent, or that Plaintiffs were treated differently on account of their race. (*See, e.g.*, Am. Compl. ¶¶ 63-65 (asking a series of rhetorical questions like why the owners of Bonkerz, who were non-diverse, were not targeted by the Township for code violations).) Instead, Plaintiffs provide "what-else-could-it-be" type allegations in an effort to create an inference of racially-motivated discrimination from facts

10

that in and of themselves do not suggest any such discrimination occurred. *Twombly*, 550 U.S. at 545 ("Factual allegations must be enough to raise a right to relief above the speculative level"); *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Liability Litig.*, 903 F.3d 278, 281 (3d Cir. 2018) (finding that at the motion to dismiss stage, a "plaintiff must . . . allege facts that would permit a factfinder to determine, without relying on mere conjecture," that a plaintiff's allegations can successfully state a claim); *Young v. Kann*, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991) (affirming a claim's dismissal where the allegations underlying it were based "merely upon [the plaintiff's] own suspicion and speculation"). Accordingly, Plaintiffs' allegations of race-based discrimination and a failure of the Township to offer Plaintiffs equal protection fail because they are speculative and conclusory, and Defendants' motion to dismiss Plaintiffs' equal protection claim is therefore granted.[11]

### b.    Due Process

Defendants' also move to dismiss Plaintiffs' substantive and procedural due process claims. (*See* Defs.' Moving Br. 32-39.) First, as to Plaintiffs' substantive due process claim, here, like with Plaintiffs' Fifth Amendment claim, Plaintiffs offer no new argument as to why their claim

---

[11] Plaintiffs' *Monell* claim fails for the same reasons. A *Monell* claim requires, in part, that a plaintiff adequately allege a "policy or custom" on the part of a local government which "inflicts [an injury] that the government as an entity [can be held] responsible for." *Bernal v. Borough of Bogata*, No. 22-5044, 2023 WL 1883353, at *6 (D.N.J. Feb. 9, 2023) (quoting *Monell v. Dep't of Soc. Servs. Of City of N.Y.*, 436 U.S. 658, 694 (1978)). Plaintiffs allege that Defendants engaged in a policy and custom of "discrimination and unequal treatment based on race." (Am. Compl. ¶ 178.) As just stated, however, all of Plaintiffs' allegations sounding in discrimination are conjectural, and the Amended Complaint is devoid of factual allegations that might support an inference of race-based discrimination against Plaintiffs, let alone a "policy and custom" of the same. (*See generally* Am. Compl.) In fact, Plaintiffs themselves provide allegations that are self-aware as to their speculative nature where they even go so far as to explicitly recognize that race may not be Defendants' motivating factor in acting against Plaintiffs' interests at all. (*See, e.g., id.* ¶ 59 (alleging that certain actions by Dominach were deceitful, and that such deceit is "[c]learly evidence of bias, *racial or otherwise*, directed at [Plaintiffs]")(emphasis added).)

should succeed. (*See generally* Pls.' Opp'n Br.) Moreover, Plaintiffs fail to point this Court to any new allegations that might suggest Defendants engaged in behavior that "shocks the conscience," which this Court previously found absent from Plaintiffs' original Complaint. (*See* Previous Op. 20 (finding, as this Court does here again, that "Plaintiffs' allegations regarding Defendants' alleged racial discrimination in enforcing fire code regulations amount only to unsupported accusations because 'there is an absolute dearth of facts within the . . . pleading to even inferentially support this broad assertion.'" (citation omitted)); *see also* (Pls.' Opp'n Br. *28 (contending, as they previously did in opposing Defendants' first motion to dismiss, that "Defendants have racially targeted Plaintiffs and their business and imposed variances and violations upon them" and "Plaintiffs were not subjected to the same until well over a year" after the business began operating."); Pls.' Previous Opp'n Br. 24, ECF No. 7).) As such, the Court finds no reason to revisit its previous findings where Plaintiffs provide no new relevant allegations, and Plaintiffs' substantive due process claim is again dismissed.

Second, as to procedural due process, Plaintiffs primary contention is that they did not receive a "fair and impartial" hearing. (Pls.' Opp'n Br. 29.) Here, Plaintiffs did make amendments responsive to this Court's previous findings that they failed to provide sufficient details as to what hearings they were referring to in bringing their procedural due process claim. (Am. Compl. ¶¶ 47, 56-58, 95; Previous Op. 21-22.) These changes, however, do not save Plaintiffs' procedural due process claim.

"To prevail on a procedural due process claim, a litigant must show[:] (1) that the state deprived him of a protected interest in life, liberty, or property[;] and (2) that the deprivation occurred without due process of law." *Elansari v. United States*, 823 F. App'x 107, 112 (3d Cir. 2020) (quoting *Burns v. Pa. Dep't of Corr.*, 544 F.3d 279, 285 (3d Cir. 2008)). "In analyzing a

procedural due process claim, the first step is to determine whether the nature of the interest is one within the contemplation of the 'liberty or property' language of the Fourteenth Amendment." *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000) (quoting *Fuentes v. Shevin*, 407 U.S. 67, 92 (1972)). "It is elementary that procedural due process is necessitated only if there has been a taking or deprivation of a protected interest." *Chrysler Corp. v. Fedders Corp.*, 670 F.2d 1316, 1321 (3d Cir. 1982) (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972)). Here, Plaintiffs have failed to adequately allege a "taking," thus Plaintiffs must show the "deprivation of a protected interest." *Id.* To that end, Plaintiffs allege that they "lost use and enjoyment of the P[remises] as well as its intended business use and benefit." (Am. Compl. ¶ 206.)

Defendants do not challenge that Plaintiffs' alleged property interest is sufficient; instead, Defendants challenge that the process that it offered Plaintiffs was constitutionally deficient. (Defs.' Moving Br. 35-37.) Plaintiffs allege that they were not "given an adequate opportunity to defend against governmental action" and that they were not "given the opportunity to cure any alleged violations." (Am. Compl. ¶ 205.) Plaintiffs provide no further allegations as to why process was deficient. (*See generally id.*)

Contrary to Plaintiffs' conclusory allegations above, Plaintiffs' Amended Complaint is replete with allegations that sound in constitutionally-sufficient process. *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (holding that "some form of hearing is required before an individual is finally deprived of a property interest" and setting forth that this hearing need only generally be "an opportunity to be heard 'at a meaningful time and in a meaningful manner'" (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965))). To begin, Plaintiffs allege that they requested a hearing after receiving the Notice, and by Plaintiffs' own allegations, one was given. (*See* Am. Compl. ¶¶ 32-41.) Moreover, Plaintiffs allege that they were given the opportunity to provide

13

certain evidence to Kowalsky, and that Kowalsky expressed no interest in interfering with Plaintiffs' business. (Am. Compl. ¶¶ 23-26.) The Township then offered Plaintiffs an opportunity to cure their concerns after a meeting with Plaintiffs, which Plaintiffs attempted to comply with while seeking a new location for Deejaiz. (Am. Compl. ¶¶ 36, 41-42.) Eventually, Plaintiffs were instructed to cease operating, a decision which Plaintiffs appealed to the Construction Board of Appeals. (Am. Compl. ¶ 95.) Under N.J. Stat. Ann. § 52:27D-127(b), Plaintiffs then had the opportunity to appeal the Board's decision to the Superior Court. There is no allegation or other indication in the record that Plaintiffs exercised that right. (*See generally* Am. Compl.)

Given the above allegations, this Court can discern no basis for Plaintiffs' conclusory proclamation that they were not given an adequate opportunity to defend against government action. Accordingly, Plaintiffs fail to adequately allege a procedural due process claim, and Defendants' motion to dismiss the claim is granted.

### 3.    Title VI Claim

That leaves only Plaintiffs' Title VI claim as the sole remaining Federal Claim. This claim is predicated on Plaintiffs successfully alleging intentional racial discrimination. *Williams v. Pennridge Sch. Dist.*, 782 F. App'x 120, 127 (3d Cir. 2019) (finding that the "hallmark" of Title VI claims is "intentional discrimination" (collecting cases)); *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001) ("[I]t is . . . beyond dispute . . . that [Title VI] prohibits only intentional discrimination."). For the same reasons outlined above that Plaintiffs cannot successfully state their other claims based upon speculative racial discrimination, Plaintiffs' Title VI claim also fails. Therefore, Defendants' motion to dismiss Plaintiffs' Title VI claim is granted.[12]

---

[12] Because there are no adequately pled federal claims, the Court does not need to reach the issue of qualified immunity. (Defs.' Moving Br. 37.)

### B.      The State Law Claims

In light of the above findings, the Court declines to exercise supplemental jurisdiction over the State Claims. "[W]here[, as here,] the claim[s] over which the district court has original jurisdiction [are] dismissed before trial, the district court *must* decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995) (emphasis added) (citations omitted); *accord. Garges v. People's Light & Theatre Co.*, 529 F. App'x 156, 163 (3d Cir. 2013); *Haqq v. Warren County Corr. Ctr.*, No. 21-17202, 2022 WL 2473440, at *2 (D.N.J. July 6, 2022). Here, no principles of judicial economy, convenience, or fairness exist that might support this Court's exercise of continued jurisdiction. As such, this Court declines supplemental jurisdiction, and the State Claims are dismissed without prejudice. *W. Mifflin*, 45 F.3d at 788.

## IV.      CONCLUSION

For the above reasons, Plaintiffs' Amended Complaint is dismissed in its entirety. An appropriate order will follow this Memorandum Opinion.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE