**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DEEJAIZ LLC, *et al.*,<br><br>                    Plaintiffs,<br><br>          v.<br><br>TOWNSHIP OF FRANKLIN, *et al.*,<br><br>                    Defendants. | Civil Action No. 23-3192 (MAS) (RLS)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon Defendants the Township of Franklin (the "Township"), Vincent Lupo ("Lupo"), Doug Kowalsky ("Kowalsky"), John Hauss ("Hauss"), Vincent Andrew Dominach, Jr. ("Dominach"), and Sapana Shah's ("Shah") (collectively "Defendants") Motion to Dismiss (ECF No. 33)[1] Plaintiffs Deejaiz LLC d/b/a Supreme Eventz and Supreme Productionz ("Deejaiz"), Jason Robinson, and Danyale Robinson's (collectively "Plaintiffs") Second Amended Complaint ("SAC") (ECF No. 29). Plaintiffs opposed (ECF No. 36), and Defendants replied (ECF No. 39). After careful consideration of the parties' submissions, the Court decides Defendants' motion without oral argument pursuant to Local Civil Rule 78.1(b). For the reasons outlined below, Defendants' Motion to Dismiss is granted.

---

[1] Defendants also seek leave to file a brief in excess of the page limit proscribed by Local Civil Rule 7.2(b) *nunc pro tunc*. (ECF No. 34.) Defendants should have obtained permission to file an overlength brief in advance, rather than request permission after filing the overlong brief. *See* L. Civ. R. 7.2(b) ("Briefs [over 40 pages] will only be accepted if special permission of the Judge is obtained prior to submission of the brief.") Plaintiffs, however, do not oppose this motion. The Court, therefore, exercises its discretion to grant Defendants' motion and considers Defendants' brief as filed.

I.      **BACKGROUND**

    A.      **Factual Background**[2]

In its Memorandum Opinion today, the Court focuses on the additional allegations that Plaintiffs brought in their SAC and whether such additions render Plaintiffs' SAC capable of surviving Defendants' Motion to Dismiss. As such, the Court adopts and incorporates the background set forth in the Court's Memorandum Opinion dated November 22, 2024 (the "November 2024 Opinion"), dismissing Plaintiffs' First Amended Complaint ("FAC"). (Nov. 2024 Op., ECF No. 27.) For the sake of clarity, the Court recounts certain factual allegations below.

Deejaiz is an "African-American/Minority owned business" that "hosted various social events." (SAC ¶ 1,[3] ECF No. 29.) Defendants are the Township and various of its officials. (*Id.* ¶¶ *5-*6.)[4] On February 4, 2021, Plaintiffs filed for and obtained a use variance approval from the Township. (*Id.* ¶ 2.) The building that Deejaiz planned to operate out of (the "Premises") was designated as an A-3 use group. (*Id.* ¶ 4.) On February 8, 2022, Plaintiffs were informed by Kowalsky, a fire marshal for the Township, of a need to inspect the Premises. (*Id.* ¶ 21.) Plaintiffs arranged this inspection for the next day, at which time Kowalsky informed Plaintiffs that Hauss, the Township's Director of Fire Prevention, was concerned that Plaintiffs were hosting events at the Premises, in violation of Plaintiffs' A-3 use. (*Id.* ¶ 22-23.) Plaintiffs immediately provided Kowalsky with the prior approvals that they received from various departments of the Township.

---

[2] For the purpose of considering the instant motion, the Court accepts all factual allegations in the SAC as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

[3] The Court cites to the numbered paragraphs starting in the "Factual Allegations" section of the SAC, unless otherwise noted.

[4] Page numbers with asterisks refer to the numbered paragraphs in the "Parties" section of the SAC.

(*Id.* ¶ 23-24.) Kowalsky told Plaintiffs that someone "dropped the ball" and that he needed to determine what needed to be done from a "fire safety angle." (*Id.* ¶¶ 25-26.)

On March 9, 2022, the Township, through its Fire Prevention Department, "issued a Notice of Imminent Hazard and Order to Take Corrective Action" (the "Notice"), which required that Plaintiffs "cease operations/events" at the Premises by noon that same day. (*Id.* ¶ 28.) It was signed by Hauss and not signed by any Township construction official, which Plaintiffs allege was improper under N.J. Administrative Code 5:70-3.1. (*Id.* ¶¶ 28, 31-32.)

After receipt of the Notice, Plaintiffs immediately filed an appeal with the Somerset County Construction Board of Appeals. (*Id.* ¶ 33.) They also requested a meeting with Township officials to ensure that Plaintiffs' business was not affected and to remove any "perceived 'imminent perils or hazards.'"[5] (*Id.*) At a meeting with the Township, Hauss "bombarded [Plaintiffs] with accusations[,]" and Plaintiffs were instructed to fix identified problems "not related to the rented space, [but] rather [related to] other parts of the building." (*Id.* ¶¶ 36-37.) The Township's insistence that Plaintiffs stop their business to fix the Township's concerns grew primarily from a flyer in the Township's possession which purported to show that Plaintiffs would be hosting a "Boogie Nights" event that was "not approved, promoted[,] or allowed by Plaintiff[s] and did not occur." (*Id.* ¶¶ 39-41.)

Plaintiffs were subsequently allowed to continue operating at the Premises, provided that two fire watch professionals be present at every event, and that all events "be reviewed and approved" by Hauss. (*Id.* ¶ 42.) In the meantime, Plaintiffs also searched for a new location to

---

[5] To this end, Plaintiffs seemed to be operating under the assumption that the Premises is designated as an A-3 use. (*See* SAC ¶ 33 (requesting a meeting with Township officials to see how Plaintiffs might "implement appropriate measures to comply with A-2 [u]se group requirements"); *id.* ¶ 4 (noting Plaintiffs were offered a variance to operate as an A-3 use).) An A-2 use is required, however, to "allow[] consumption of food and beverage on the [P]remises." (*Id.* ¶ 9.)

operate their business (*id.* ¶¶ 44-47), through which Plaintiffs discovered a similarly situated, non-minority owned entity, "Bonkerz" (*id.* ¶ 51). Bonkerz was classified as an A-3 use, like the Premises, but marketed itself as an arcade and restaurant, which would constitute an A-2 use. (*Id.* ¶¶ 62, 63.)[6]

On April 11, 2022, Plaintiffs received a letter from Shah, the Township's attorney, outlining several concerns with the use of the Premises. (*See id.* ¶ 92.) On May 22, 2022, despite Plaintiffs' compliance with the Township's conditions and good faith efforts to arrange a meeting to provide updates and a request for an extension, the Township shut down Plaintiffs' business. (*Id.* ¶ 95.)

B.     **Procedural Background**

On February 1, 2023, Plaintiffs served a demand letter on the Township related to a Notice of Tort Claim that Plaintiffs filed against the Township on June 6, 2022. (*Id.* ¶ 97.) On February 21, 2023, Plaintiffs received correspondence from the Township's claims administrator that Plaintiffs' Notice of Tort Claim was denied on November 22, 2022. (*Id.* ¶ 98.)

On June 12, 2023, Plaintiffs filed their initial complaint in this matter. (ECF No. 1.) On February 8, 2024, this Court dismissed Plaintiffs' Fifth Amendment due process claim with prejudice and all other claims without prejudice (the "February 2024 Opinion"), after Defendants initially moved to dismiss. (ECF No. 17.) Plaintiff filed an Amended Complaint on March 11, 2024. (ECF No. 19.) On November 22, 2024, this Court dismissed all of Plaintiffs' claims without prejudice after Defendants' second motion to dismiss. (ECF No. 27.) Plaintiffs filed the SAC on

---

[6] The Court notes that it does not recite Plaintiffs' allegations in paragraphs 64-91 because they are an amalgamation of rhetorical questions, legal argument, or reframing of factual allegations that Plaintiffs already set forth in the SAC. (*See* SAC ¶¶ 64-91.) Instead, the Court sets forth only Plaintiffs' plausible and non-conclusory factual allegations.

December 23, 2024.[7] (SAC.) Defendants moved to dismiss (Defs.' Moving Br., ECF No. 33), Plaintiffs opposed (Pls.' Opp'n Br., ECF No. 36),[8] and Defendants replied (Defs.' Reply Br., ECF No. 39).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2)[9] "requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss under Rule 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must identify "the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court must identify all of the plaintiff's well-pleaded factual allegations, accept them as true, and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court can discard bare legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Third, the court

---

[7] The Court notes that Plaintiffs did not timely file the SAC. (*See* Order, ECF No. 28 (granting Plaintiffs 30 days from November 22, 2024, to file the SAC); SAC (filed on December 23, 2024, a day later than the deadline in the Court's Order).) The Court, nevertheless, considered Plaintiffs' claims.

[8] In addition, the Court notes that Plaintiffs timely filed their initial Opposition Brief but did not timely file their amended Opposition Brief. (*See* ECF No. 35 (timely filed on February 4, 2025); ECF No. 36 (filed a week later, on February 11, 2025).) Since the Court previously set the Motion date for February 18, 2025, Plaintiffs' amended Opposition Brief was filed a week later than the deadline. L. Civ. R. 7.1(d)(2) (opposition briefs must be filed at least 14 days prior to the motion day). Although Plaintiffs' counsel did not seek permission to file a late amended Opposition Brief, the Court, nevertheless, exercised its discretion to consider Plaintiffs' amended Opposition Brief.

[9] All references to "Rule" or "Rules" hereafter refer to the Federal Rules of Civil Procedure.

must determine whether "the [well-pleaded] facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

### III. DISCUSSION

Plaintiffs allege in their SAC: (1) a violation of the Fifth Amendment's Takings Clause and/or Just Compensation Clause ("Count One"); (2) a violation of the Fourteenth Amendment's Equal Protection Clause and/or Due Process Clause ("Count Two"); (3) a violation of Title VI of the Civil Rights Act of 1964 ("Title VI") ("Count Three," and together with Counts One and Two, the "Federal Claims"); (4) a violation of the New Jersey Civil Rights Act, Equal Protection Clause ("Count Four"); (5) tortious interference with economic advantage ("Count Five"); (6) breach of contract ("Count Six"); (7) negligence ("Count Seven"); (8) fraudulent misrepresentation ("Count Eight"); (9) promissory estoppel ("Count Nine"); and (10) intentional or negligent infliction of emotional distress[10] ("Count Ten," and together with Counts Four through Nine, the "State Claims").[11] (*See generally* SAC.) For the reasons outlined below, Plaintiffs have failed to state a

---

[10] Despite Plaintiffs labeling this claim as "Promissory Estoppel," based on the substance of the claim, the Court interprets this claim in Plaintiffs' favor to be an intentional or negligent infliction of emotional distress claim. (*See* SAC ¶¶ 291-97.)

[11] Plaintiffs bring substantially the same federal claims as set forth in the First Amended Complaint ("FAC") (*compare* FAC, ECF No. 19; *with* SAC) and bring additional state law claims in their SAC (SAC ¶¶ 261-97).

6

claim as to the Federal Claims, and this Court declines to exercise supplemental jurisdiction over the remaining State Claims.

### A. The Federal Claims

Plaintiffs' Federal Claims arise under: (1) the Fifth Amendment; (2) the Fourteenth Amendment; and (3) Title VI. (SAC ¶¶ 100-77, 207-54.) Defendants seek to dismiss each Federal Claim. (*See generally* Defs.' Moving Br.) The Court addresses each in turn.

#### *1. Fifth Amendment Claim (Count One)*

Defendants argue that Plaintiffs have not adequately pled that there was a violation of the Takings Clause of the Fifth Amendment because Plaintiffs do not allege any new facts in the SAC that plausibly plead a cause of action. (Defs.' Moving Br. 22-28.) Plaintiffs argue in opposition that they have adequately pled this claim because the SAC alleges that Defendants selectively enforced the Township's regulations and targeted Plaintiffs in a way that violated the Takings Clause, and Defendants have not provided just compensation for this taking. (Pls.' Opp'n Br. 21-26.) The Court agrees with Defendants.

A plaintiff can aver two types of regulatory takings: "(1) takings per se or total takings, where the regulation denies all economically beneficial productive use of the property . . . ; and (2) partial takings that, though not rendering the property idle, require compensation under the test set forth in [*Penn Central Transportation Co.*]." *Nekrilov v. City of Jersey City*, 45 F.4th 662, 669 (3d Cir. 2022) (internal citations omitted). "[A] party challenging governmental action as an unconstitutional taking bears a substantial burden." *E. Enters. v. Apfel*, 524 U.S. 498, 523 (1998).

The Court's analysis can be brief because Plaintiffs offer no substantive amendments to their "total takings" or "partial takings" allegations. (*See generally* SAC.) As an initial matter, it is unnecessary to recite case law in a complaint. Plaintiffs add a lengthy allegation in their SAC that

7

recites the factors laid out in *Penn Central Transportation Co.*, presumably to support their allegations of a taking under the Fifth Amendment. (*See id.* ¶¶ 107-08, 125-29.) In a complaint at the motion to dismiss stage, however, "[f]actual allegations alone are what matters." *McMahon v. Volkswagen Aktiengesellschaft*, No. 22-1537, 2023 WL 4045156, at *20 (D.N.J. June 16, 2023) (citation omitted). After this recitation of case law, Plaintiffs add conclusory allegations that they were subjected to a taking that satisfies each of the elements laid out in *Penn Central Transportation Co.* (SAC ¶¶ 125-29) and that they have suffered economic harm due to such taking (*id.* ¶ 126 ("Aside from satisfying the *Penn Central Test* . . . there has been a significant economic impact realized by the Plaintiff[s].")). At the motion to dismiss stage, however, the Court "is not required to accept conclusory allegations." *Eli Lilly & Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 475 (D.N.J. 1998) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Plaintiffs also have not pled any new facts that the Court has not already addressed in the February 2024 or November 2024 Opinions, and the Court sees no reason to revisit these findings. As such, Defendants' Motion to Dismiss Count One is granted.

### 2.     *Fourteenth Amendment Claims (Count Two)*

Defendants next move to dismiss Plaintiffs' Equal Protection and Due Process claims brought under the Fourteenth Amendment. (Defs.' Moving Br. 29-33, 36-41.) Defendants primarily contend that Plaintiffs' claims of race-based discrimination are conclusory and devoid of factual support. (*Id.* at 31-32.) The Court agrees.

#### a.     **Equal Protection**

To state a claim under the Equal Protection Clause, Plaintiffs must allege: "(1) [that they are] member[s] of a protected class; (2) that [they were] treated differently from similarly situated individual[s]; and (3) that this disparate treatment was based on [their] membership in the protected

8

class." *Kaul v. Christie*, 372 F. Supp. 3d 206, 254 (D.N.J. 2019) (citing *Kasper v. County of Bucks*, 514 F. App'x 210, 214-215 (3d Cir. 2013)). As in the FAC, Plaintiffs have adequately alleged that they are members of a protected class (SAC ¶ 1), and that other similarly situated businesses were treated differently (*id.* ¶¶ 51-63 (alleging that a separate business with "non-African American" owners received preferential treatment as compared to Plaintiffs by being permitted to perform activities that require an A-2 use designation despite being classified as an A-3 use)). Plaintiffs' claims, however, fail again at the third element because Plaintiffs fail to adequately allege that the disparate treatment they received was based on race.

To the extent that Plaintiffs add allegations concerning their equal protection claim (*see* SAC ¶¶ 155-60), such allegations are conclusory and suffer the same deficiencies as those in the previous complaints.[12] In particular, Plaintiffs newly allege that "[t]he Township's actions were triggered by a 'Boogie Nights' event flyer . . . indicating an inspection was initiated based on racially stereotypical assumptions." (*Id.* ¶ 159.) Without further factual allegations, however, the Court cannot draw a reasonable inference of such racial discrimination. *Twombly*, 550 U.S. at 545 ("Factual allegations must be enough to raise a right to relief above the speculative level."); *In re Johnson & Johnson Talcum Powder Prods. Mtkg., Sales Pracs. & Liability Litig.*, 903 F.3d 278, 281 (3d Cir. 2018) (finding that at the motion to dismiss stage, a "plaintiff must . . . allege facts that would permit a factfinder to determine, without relying on mere conjecture," that a plaintiff's allegations can successfully state a claim). Where the underlying allegations are based

---

[12] Plaintiffs also seek to allege disparate treatment due to racial identity through a series of repeated rhetorical allegations that, as this Court previously noted, follow a "what-else-could-it-be" format. (*See* Nov. 2024 Op. 10-11; *see, e.g.*, SAC ¶¶ 64-91 (asking a series of rhetorical questions like why the owners of Bonkerz, who were non-diverse, were not targeted by the Township for code violations).) But as the Court has previously held, these types of allegations are not sufficient to plead race-based discrimination. (*See* Nov. 2024 Op. 10-11.)

9

"merely upon [the plaintiff's] own suspicion and speculation," the Third Circuit has dismissed such claims. *Young v. Kann*, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991). Because Plaintiffs' allegations of race-based discrimination are conclusory, this claim fails and, accordingly, Defendants' Motion to Dismiss Plaintiffs' equal protection claim is granted.[13]

### b.    Due Process

Defendants also move to dismiss Plaintiffs' substantive and procedural due process claims. (*See* Defs.' Moving Br. 36-42.) The Court addresses each in turn.

#### i.    *Substantive Due Process*

As to Plaintiffs' substantive due process claim, Plaintiffs fail to point this Court to any new allegations that might suggest that Defendants engaged in behavior that "shocks the conscience" or offer a new argument as to why their claim should succeed. (*See generally* SAC; Pls.' Opp'n Br. 33-34.) As such, the Court finds no reason to revisit its previous findings, and the Court grants Defendants' Motion to Dismiss Plaintiffs' substantive due process claim.

#### ii.    *Procedural Due Process*

"To prevail on a procedural due process claim, a litigant must show[:] (1) that the state deprived him of a protected interest in life, liberty, or property[;] and (2) that the deprivation occurred without due process of law." *Elansari v. United States*, 823 F. App'x 107, 112 (3d Cir. 2020) (quoting *Burns v. Pa. Dep't of Corr.*, 544 F.3d 279, 285 (3d Cir. 2008)). "In analyzing a procedural due process claim, the first step is to determine whether the nature of the interest is one within the contemplation of the 'liberty or property' language of the Fourteenth Amendment."

---

[13] While Plaintiffs still allege in the SAC that "there is a valid Monell claim against [Defendants]" (SAC ¶ 194), the Court already rejected this argument in its November 2024 Opinion and without any additional allegations in the SAC, declines to revisit this argument. (Nov. 2024 Op. 11 n.11; SAC ¶¶ 194-200); *see Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978).

*Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000) (quoting *Fuentes v. Shevin*, 407 U.S. 67, 92 (1972)). "It is elementary that procedural due process is necessitated only if there has been a taking or deprivation of a protected interest." *Chrysler Corp. v. Fedders Corp.*, 670 F.2d 1316, 1321 (3d Cir. 1982) (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972)).

Defendants argue that Plaintiffs have not satisfied the second element of a procedural due process claim—that the deprivation occurred without due process of law. (Defs.' Moving Br. 39-42.) Specifically, Defendants argue that Plaintiffs did in fact take part in the appeal process outlined under N.J. Stat. Ann. § 52:27D-127(b) but failed to participate in the entire process available to them. (*Id.* at 40-41.) Defendants further argue that these are the same issues presented to the Court in the FAC, and that Plaintiffs have not pled additional facts that demand a different outcome. (*Id.*) Plaintiffs argue in opposition that while they were provided an opportunity to be heard, "such hearing was not fair and impartial nor was the decision maker unbiased." (Pls.' Opp'n Br. 36.)

Here, Plaintiffs add allegations to the SAC that they did not receive proper notice because the Notice did not adhere to N.J. Administrative Code 5:70-3.1(d), as it was signed by the Fire Prevention Office, rather than a construction official. (SAC ¶¶ 164-65.) Under N.J. Administrative Code 5:70-3.1(d), "a lack of compliance with [N.J. Administrative Code 5:70-4] shall be cited by the fire official" and a "suspected lack of compliance with the provisions of the Uniform Construction Code in effect at the time of construction or installation shall be referred to the local construction official for appropriate action." N.J. Admin. Code § 5:70-3.1.

Even if the Court assumes in Plaintiffs' favor that at issue was a *suspected* lack of compliance that should have been properly referred to a construction official, "a mere violation of a state statute does not necessarily constitute a violation of the [Procedural] Due Process Clause."

11

*Whittaker v. County of Lawrence*, 674 F. Supp. 2d 668, 695 (W.D. Pa. 2009) (citation omitted), *aff'd*, 437 F. App'x 105 (3d Cir. 2011); *see also Paul v. Davis*, 424 U.S. 693, 700 (1976) (quoting *Screws v. United States*, 325 U.S. 91, 108 (1945)) ("Violation of local law does not necessarily mean that federal rights have been invaded."). Rather, "[t]he fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

In an attempt to adequately plead a procedural due process claim, Plaintiffs add allegations, but these allegations are conclusory, repetitive, and suffer the same deficiencies as the original allegations. (*See, e.g.*, SAC ¶ 162 ("Plaintiff[s were] not provided with sufficient notice or opportunity to address the alleged violations before enforcement actions were taken."); *id.* ¶ 168-69 ("Plaintiff[s were] subjected to inconsistent enforcement of zoning and safety regulations compared to other business[es]" and "[t]his inconsistency indicates a lack of procedural uniformity and fairness, which could suggest discriminatory practices.").) The SAC is still replete with allegations which reflect that Plaintiffs received constitutionally-sufficient process because they requested and were granted a meeting with Township officials, given the opportunity to present certain evidence, and appealed the Township's decision to make Plaintiffs stop operating to the Construction Board of Appeals. (*See id.* ¶¶ 33-42, 96.) While Plaintiffs could have appealed the Construction Board of Appeals' decision to the Superior Court, *see* N.J. Stat. Ann. ¶ 52:27D-127(b), there is no allegation that Plaintiffs exercised this right (*see generally* SAC). In sum, Plaintiffs have not provided any allegation that would compel this Court to disturb its previous finding. As such, Plaintiffs again fail to adequately allege a procedural due process claim, and Defendants' motion to dismiss Count Two is granted.

12

### 3.     *Title VI Claim (Count Three)*

Plaintiffs add a series of allegations to the SAC under their Title VI claim, in an attempt to support their allegations of racial discrimination. (SAC ¶¶ 219-31.) Plaintiffs' Title VI claim is predicated on Plaintiffs successfully alleging intentional racial discrimination. *Williams v. Pennridge Sch. Dist.*, 782 F. App'x 120, 127 (3d Cir. 2019) (finding that the "hallmark" of Title VI claims is "intentional discrimination" (collecting cases)); *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001) ("[I]t is . . . beyond dispute . . . that [Title VI] prohibits only intentional discrimination.")

The added allegations, however, merely restate allegations provided elsewhere in the SAC and suffer the same deficiencies as outlined above because they seek to raise inferences of racially-motivated discrimination based on facts that do not otherwise indicate such discrimination. (SAC ¶¶ 219-31.) For example, Plaintiffs allege that Defendants acted against Plaintiffs "following the discovery of a 'Boogie Nights' event flyer" (*Id.* ¶ 219) and that "[t]his flyer . . . was used by . . . Defendants as a pretext to initiate regulatory scrutiny based on racial stereotypes associated with African American culture." (*Id.* ¶ 220.) Without further factual allegations and for the same reasons outlined above, Plaintiffs cannot successfully state their Title VI claim based upon speculative racial discrimination. As such, the Court grants Defendants' motion to dismiss Count Three. Since this Court previously dismissed Plaintiffs' Complaint and

FAC without prejudice and gave Plaintiffs the opportunity to amend their complaints to properly allege their claims, Plaintiffs' SAC is now dismissed with prejudice.[14]

### B. The State Law Claims (Counts Four Through Ten)

In light of the above findings, the Court declines to exercise supplemental jurisdiction over the State Claims. "[W]here[, as here,] the claim[s] over which the district court has original jurisdiction [are] dismissed before trial, the district court *must* decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995) (emphasis added) (citations omitted). Here, no principles of judicial economy, convenience, or fairness exist that might support this Court's exercise of continued jurisdiction. As such, this Court declines to exercise supplemental jurisdiction, and Counts Four Through Ten are dismissed without prejudice to Plaintiffs' right to seek relief before an appropriate state court.

## IV. <u>CONCLUSION</u>

For the reasons set forth above, Defendants' Motion to Dismiss is granted. Plaintiffs' Federal Claims are dismissed with prejudice. Plaintiffs' State Claims are dismissed without prejudice to Plaintiffs' right to seek relief before an appropriate state court. The Court will issue an Order consistent with this Memorandum Opinion.

Dated: August <u>30</u>, 2025

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

---

[14] Because there are no adequately pled federal claims, the Court does not need to reach the issue of qualified immunity. (Defs.' Moving Br. 42); *Gannaway v. Karetas*, 438 F. App'x 61, 67 (3d Cir. 2011) ("As there was no constitutional violation, we need not engage in an analysis of qualified immunity."); *see also Guzman v. City of Newark*, No. 20-6276, 2023 WL 373025, at *11 (D.N.J. Jan. 23, 2023) (declining to reach defendants' qualified immunity argument where plaintiff failed to plausibly plead his constitutional claims).